

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 16 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE CANON USA INC. DIGIC LITIGATION | ) ) ) | MDL Docket No. _____ |

### MOTION OF DEFENDANT CANON U.S.A., INC., FOR
### TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

For the reasons set forth below and in the accompanying memorandum of law, defendant

Canon U.S.A., Inc. ("Canon USA") respectfully moves this Panel for an order pursuant to 28

U.S.C. § 1407, transferring Law v. Canon U.S.A., Inc., Case No. CV 05-7959 GAF (RZx),

United States District Court for the Central District of California ("Law," a copy of the

Complaint for Damages and Equitable Relief is attached hereto as Exhibit A), to the United

States District Court for the Southern District of New York, to be consolidated with Hyman, et

al., v. Canon U.S.A. Incorporated, Case No. 05 cv 7233 (JSR), United States District Court for

the Southern District of New York ("Hyman," a copy of the Consolidated Amended Class

Action Complaint is attached hereto as Exhibit B), for coordinated pretrial proceedings.

**OFFICIAL FILE COPY**



## AVERMENTS OF FACT

Pursuant to Rule 7.1 of this Panel's Rules of Procedure, Canon USA makes the following averments of fact in support of its present motion:

1.     The first relevant action against Canon USA was filed by Plaintiff David Hyman on or about August 15, 2005, in the Southern District of New York.  That action was assigned to the Hon. Stephen C. Robinson at the White Plains, New York courthouse and then re-assigned to the Hon. Jed S. Rakoff in Manhattan, New York.

2.     Plaintiffs David Nugent and Patrick McQuaid filed a similar action on or about September 8, 2005, also in the Southern District of New York ("Nugent"), which was assigned to the Hon. Miriam Goldman Cedarbaum in Manhattan.

3.     The Hyman action was then transferred to Judge Rakoff and, on or about September 29, 2005, Judge Rakoff ordered that the Hyman and Nugent cases be consolidated before him.  The three Plaintiffs filed a Consolidated Amended Class Action Complaint on October 7, 2005, which added a fourth Plaintiff, James L. Branscum.

4.     Defendant has not yet filed a responsive pleading or motion in Hyman, nor has either party produced discovery.

5.     The second action, Law, was filed in the California Superior Court for the County of Los Angeles, on about October 17, 2005.  Canon USA was served with the complaint on October 26, 2005.  Canon USA removed the Law action to the United States District Court for the Central District of California on November 7, 2005.  No other proceedings have taken place in Law.

6.      On November 4, 2005, Judge Rakoff granted the <u>Hyman</u> Plaintiffs' request to file a second amended complaint.  The <u>Hyman</u> Plaintiffs' second amended complaint is due to be filed on or before November 18, 2005.

7.      The <u>Hyman</u> and <u>Law</u> complaints contain essentially the same factual allegations, covering essentially the same time period, against the same defendant, and alleging violations of analogous consumer protection statutes and common law theories of liability.  For example, each complaint alleges that:

- Canon USA designs, manufactures, markets and sells digital cameras, including the Canon-brand PowerShot point-and-shoot digital cameras. <u>Hyman</u> ¶ 22; <u>Law</u> ¶ 8.

- Canon USA developed a proprietary image processor, the DIGIC chip, which was introduced to the market in or around September 2002.  <u>Hyman</u> ¶ 37; <u>Law</u> ¶ 10.

- The DIGIC chip is included in nearly every Canon-brand PowerShot camera. <u>Hyman</u> ¶ 38; <u>Law</u> ¶ 10.

- The DIGIC chip is the brain of the Canon-brand cameras, controlling nearly every function of the camera.  <u>Hyman</u> ¶ 39; <u>Law</u> ¶ 11.

- Canon USA spent $42 million marketing and advertising DIGIC-containing cameras.  <u>Hyman</u> ¶ 42; <u>Law</u> ¶ 12.

- The DIGIC chip is defective.  <u>Hyman</u> ¶ 45; <u>Law</u> ¶ 14.

- The defective DIGIC chip causes irreparable problems with the Canon-brand PowerShot cameras' lens barrel extension and retraction, evidenced by an "E18" error message, which renders the cameras inoperable.  <u>Hyman</u> ¶ 50; <u>Law</u> ¶ 14.

- The defective DIGIC chip causes irreparable problems with the Canon-brand PowerShot cameras' ability to read memory cards, evidenced by a "Memory Card Error!" or "E50" error message, which renders the cameras inoperable. <u>Hyman</u> ¶ 47; <u>Law</u> ¶ 18.

- Canon USA was aware of the defects in the DIGIC chip when it sold the Canon-brand PowerShot cameras, but withheld that information from consumers.  <u>Hyman</u> ¶ 60; <u>Law</u> ¶ 15.

8.     The legal claims of the <u>Hyman</u> and <u>Law</u> Complaints are based on various consumer protection statutes and common law claims.  <u>Hyman</u> purports to plead five causes of action, including two for Unjust Enrichment, and one each for Breach of Implied Warranty of Merchantability, Negligent Misrepresentation, and violation of New York's Consumer Protection Act.  <u>Law</u> purports to plead five similar causes of action: violation of the California Consumers Legal Remedies Act, violation of the California Unlawful, Unfair and Deceptive Business Practices Act, violation of the federal Magnuson-Moss Warranty Act, violation of the California Song-Beverly Warranty Act and Breach of Express Warranty.

9.     Plaintiffs in the two actions purport to represent overlapping classes.  The <u>Hyman</u> Plaintiffs purport to represent a nationwide class of purchasers of DIGIC-containing Canon-brand digital cameras, and plead Count I specifically on behalf of residents of California.  The <u>Law</u> Plaintiff purports to represent a class of California purchasers of DIGIC-containing Canon-brand digital PowerShot cameras.  The class period in <u>Law</u> is alleged to be October 17, 2001 through the present; in <u>Hyman,</u> it is August 15, 1999 through August 15, 2005.

10.     Each of these actions is in its infancy: no answers or pre-answer motions have been filed, no classes have been certified, and no discovery responses have been served.

11.     Because of the overwhelming preponderance of factual and legal issues shared by the complaints, coordinating the actions would avoid repetitive review and adjudication, thereby saving substantial time and resources.

12.     The <u>Law</u> action and any other similar actions that may be filed against Canon USA should be transferred to the Southern District of New York to be consolidated with the <u>Hyman</u> action for coordinated pretrial proceedings.

13.     The Southern District of New York, wherein the <u>Hyman</u> action is already pending, is the most convenient forum for witnesses and all interested parties given its location in a business and banking center and the fact that Canon USA is located in Lake Success, New York, on Long Island, less than 20 miles away.

14.     Furthermore, the Southern District of New York possesses the resources, expertise, and general caseload conditions that the proposed consolidated litigation will likely require.

*          *          *

The above cases satisfy the criteria of 28 U.S.C. § 1407(a) because (1) the cases "involve[] one or more common questions of fact," (2) the transfers would further "the convenience of the parties and witnesses," and (3) the transfers "will promote the just and efficient conduct of [the] actions."

For all the foregoing reasons, Defendant Canon USA respectfully requests that this Panel enter an order transferring the <u>Law</u> action to the Southern District of New York to be consolidated with the <u>Hyman</u> action for coordinated pretrial proceedings.

Dated: November 14, 2005

Respectfully submitted,

GREENBERG TRAURIG LLP

By: _____
Michael Burrows
David J. Stone
200 Park Avenue
New York, NY 10166
Tel: (212) 801-9200
Fax: (212) 801-6400

Richard H. Silberberg
Robert G. Manson
Brooke E. Pietrzak
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
Tel: (212) 415-9200
Fax: (212) 953-7201

Attorneys for Defendant CANON U.S.A., INC.

**A**



1  Eric H. Gibbs (State Bar No. 178658)
   Dylan Hughes (State Bar No. 209113)
2  GIRARD GIBBS & DE BARTOLOMEO LLP
   601 California Street, Suite 1400
3  San Francisco, California 94108
   Telephone:  (415) 981-4800
4  Facsimile:  (415) 981-4846

5  Attorneys for Individual and Representative
   Plaintiff Wing Law

6

CONFORMED COPY
OF ORIGINAL FILED
Los Angeles Superior Court

"BY FAX"

OCT 1 7 2005

John A. Clarke, Executive Officer/Clerk
By_____, Deputy
J. SUNGA

7

8              SUPERIOR COURT OF THE STATE OF CALIFORNIA

9                        COUNTY OF LOS ANGELES

10

11  WING LAW, on behalf of herself and all          Case No. ___ BC341556
    others similarly situated,
12                                                   CLASS ACTION
                      Plaintiff,
13                                                   COMPLAINT FOR DAMAGES AND
                  v.                                 EQUITABLE RELIEF BASED ON "BY FAX"
14
                                                     1.      VIOLATION OF THE CONSUMERS
15  CANON U.S.A., INC., a New York                   LEGAL REMEDIES ACT, CIVIL CODE
    Corporation, and DOES 1-100,                     §§ 1750, ET SEQ.;
16
                      Defendants                     2.      VIOLATION OF THE UNLAWFUL,
17                                                   UNFAIR AND DECEPTIVE BUSINESS
                                                     PRACTICES ACT, BUSINESS &
18                                                   PROFESSIONS CODE §§ 17200, ET SEQ.;

19                                                   3.      VIOLATION OF THE MAGNUSON-
                                                     MOSS WARRANTY ACT, 15 USCS §§ 2301,
20  ┌─────────────────┐                              ET SEQ.;
    │ R E C E I V E D │
21  │                 │                              4.      VIOLATION OF THE SONG-
    │   OCT 2 8 2005   │                             BEVERLY CONSUMER WARRANTY ACT,
22  │                 │                              CIVIL CODES §§ 1790, ET SEQ.; AND
    │ LEGAL DEPARTMENT │
23  └─────────────────┘                              5.      BREACH OF EXPRESS WARRANTY.

24                                                   DEMAND FOR JURY TRIAL

25

26

27

28

                              CLASS ACTION COMPLAINT

1   Eric H. Gibbs (State Bar No. 178658)
    Dylan Hughes (State Bar No. 209113)
2   **GIRARD GIBBS & DE BARTOLOMEO LLP**
    601 California Street, Suite 1400
3   San Francisco, California  94108
    Telephone:  (415) 981-4800
4   Facsimile:  (415) 981-4846

5   Attorneys for Individual and Representative
    Plaintiff Wing Law

6

7

8            **SUPERIOR COURT OF THE STATE OF CALIFORNIA**

9                      **COUNTY OF LOS ANGELES**

10

11  WING LAW, on behalf of herself and all          )   Case No. _____
    others similarly situated,                      )
12                                                   )   **CLASS ACTION**
                      Plaintiff,                     )
13                                                   )   **COMPLAINT FOR DAMAGES AND**
            v.                                       )   **EQUITABLE RELIEF BASED ON:**
14                                                   )
                                                     )   1.      VIOLATION OF THE CONSUMERS
15  CANON U.S.A., INC., a New York                   )   LEGAL REMEDIES ACT, CIVIL CODE
    Corporation, and DOES 1-100,                     )   §§ 1750, ET SEQ.;
16                                                   )
                      Defendants                     )   2.      VIOLATION OF THE UNLAWFUL,
17  _____           )   UNFAIR AND DECEPTIVE BUSINESS
                                                         PRACTICES ACT, BUSINESS &
18                                                       PROFESSIONS CODE §§ 17200, ET SEQ.;

19                                                       3.      VIOLATION OF THE MAGNUSON-
                                                         MOSS WARRANTY ACT, 15 USCS §§ 2301,
20                                                       ET SEQ.;

21                                                       4.      VIOLATION OF THE SONG-
                                                         BEVERLY CONSUMER WARRANTY ACT
22                                                       CIVIL CODES §§ 1790, ET SEQ.; AND

23                                                       5.      BREACH OF EXPRESS WARRANTY.

24                                                       DEMAND FOR JURY TRIAL

25

26

27

28

Plaintiff Wing Law, on behalf of herself and the proposed plaintiff Class defined herein, alleges by and through her attorneys, upon information and belief, as follows:

## NATURE OF THE CASE

1.     Canon U.S.A., Inc. ("Canon") designs, markets, manufactures, sells, and warrants the PowerShot line of point-and-shoot digital cameras.  In a $42 million advertising campaign, Canon introduced a "revolutionary" digital camera technology it branded "DIGIC", which it started installing in its PowerShot line of cameras in 2002 and continues to install in some of its PowerShot models today ("Class Cameras").  Canon advertised and continues to advertise that Class Cameras are compact, easy to use, and superior to competitors' cameras and previous model PowerShot cameras because Canon developed DIGIC specifically for digital cameras to improve the accuracy of the auto focus, process data faster, and handle nearly every digital camera function.  Contrary to Canon's advertisements and consumers' reasonable expectations however, Class Cameras are defective, the error codes "E18" or "E50" appear on the digital display, and the camera ceases to function.  In fact, Canon has long known that Class Cameras are defective; the Internet is replete with consumer complaints and Canon's website lists the E18 and E50 error codes as the number one ranking inquiry with the PowerShot cameras.  Nevertheless, Canon continues to sell Class Cameras without disclosing their defective nature, denies that Class Cameras are defective to consumers who complain, denies consumers who are out of warranty any relief, and replaces consumers' Class Cameras that are under warranty with equally defective parts or equally defective refurbished cameras.

## JURISDICTION AND VENUE

2.     This action asserts claims under the Consumers Legal Remedies Act; the Unfair Competition Law; the Magnuson-Moss Act; the Song-Beverly Consumer Warranty Act; and California express warranty law.  This Court has jurisdiction over this class action under Article 6, Section 10 of the California Constitution and Code of Civil Procedure Section 410.10.  This Court has jurisdiction over Canon, as Canon is registered to conduct business within California and conducts substantial business within California.

1

3.      Venue is proper in this Court under Code of Civil Procedure Section 395, because, among other things, Plaintiff resides in Los Angeles County, California; many of the events complained of herein occurred in Los Angeles County, California; and Canon conducts substantial business within Los Angeles County, California.

**PARTIES**

4.      Plaintiff Wing Law is a resident of Monterey Park, California, located in the County of Los Angeles.

5.      Canon is a New York corporation with its principal place of business in Lake Success, New York.

6.      Plaintiff is ignorant of the true names and capacities of Defendants sued herein as Does 1-100, inclusive, and therefore sues these Defendants by such fictitious names. Plaintiff will amend this complaint to allege their true names and capacities when ascertained. Plaintiff is informed and believes and thereon alleges that each of the fictitiously-named Defendants is an agent, co-actor, employee, or affiliate of Canon, responsible in some manner for the unlawful conduct herein alleged, and may be served with process within the state of California.

7.      Unless otherwise stated, Canon and Does 1-100 are referred to collectively herein as "Canon" or "Defendant."

**FACTUAL ALLEGATIONS**

8.      Canon designs, manufactures, markets, sells, and warrants products ranging from copiers, printers, image filing systems, facsimile machines, cameras and lenses, and camcorders, to semiconductor, broadcast, and optical equipment, medical, and other specialized industrial products. One of the products that Canon designs, manufactures, markets, sells, and warrants is the PowerShot line of digital cameras. The PowerShot line consists of point-and-shoot cameras that Canon markets as compact and easy to use and that incorporate a non-removable telescoping lens.

9.      According to Canon, there are essentially four technologies behind a digital camera: the lens, the optical sensor, the digital image processor, and the memory card. Just like a conventional film camera, digital cameras have a series of lenses that focus light to create an

1   image. But instead of focusing the light onto a piece of film, it focuses the light on to the image

2   sensor. The image sensor then converts the light into an electronic signal. The electronic signal

3   is then converted into a digital signal and processed by the image processor that converts it into

4   an image file. The image file is then saved to a removable data storage device known as a

5   memory card.

6        10.    In 2002, Canon introduced an integrated circuit that consists of an image processor

7   and a processor that controls camera function. Canon branded this integrated circuit "DIGIC,"

8   which is short for Digital Imaging Integrated Circuit. Canon installed DIGIC in its PowerShot

9   line of cameras starting in 2002 and continues to install it in some of the PowerShot models it

10  sells today. In the fall of 2004, Canon introduced DIGIC II into the PowerShot line that,

11  according to Canon, is superior to DIGIC.

12       11.    Canon advertised and represented, and continues to advertise and represent, that

13  DIGIC was designed specifically for digital cameras and is superior to competitors' imaging

14  processors because it combines the jobs of image processing and camera function control into one

15  chip, allowing for, among other things, superior auto focus, faster writing to the memory card,

16  and superior digital photographs. In fact, DIGIC handles nearly every digital camera function

17  including image compression/expansion; memory card control; display/video control and

18  processing; auto exposure; auto focus; auto white balance control; and most other functions of the

19  camera.

20       12.    Concurrent with the release of PowerShot cameras installed with DIGIC, Canon

21  heavily advertised the advantages of DIGIC in an effort to distinguish Class Cameras from its

22  competitors' products. In early 2003, Canon introduced a $42 million nationwide print and

23  television advertising campaign to promote DIGIC. Canon also affixed a logo and graphic on all

24  Canon digital cameras containing DIGIC. One of the two television commercials entitled

25  "Journey," takes the viewer on a computer-animated journey through the camera lens for a virtual

26  tour of DIGIC inside the camera. The viewers see a processing chip bearing the DIGIC logo

27  along with an explanation of its advantages. In addition, Canon ran print advertisements

28

3

**CLASS ACTION COMPLAINT**

1   nationally that highlight the advantages of DIGIC.  Canon's advertisements claim that Canon

2   cameras with DIGIC:

3   • have faster and more powerful autofocus as well as faster image processing;

4   • have improved performance over the predecessor technology installed in the PowerShot

5      line;

6   • are optimized to seamlessly produce beautiful high-quality digital images;

7   • improve the overall operation of Class Cameras;

8   • allow images to be saved into a memory card at a fast speed allowing more shots to be

9      taken;

10   • revolutionize how pictures are taken by allowing the camera to process images faster and

11      improving the accuracy of the autofocus;

12   • boost image quality, auto-focus precision, and image-processing speed;

13   • optimize the performance of the image sensor to achieve image quality at the highest level

14      in its class;

15   • perform image processing functions with exceptional speed that cannot be matched by

16      conventional designs;

17   • allow for "super-fast" processing;

18   • operate at extremely high speeds;

19   • execute effortlessly complex algorithms for improving image quality;

20   • easily execute numerous operations for algorithms that require an enormous number of

21      calculations even for the slightest gain in image quality, and do so without any

22      compromise;

23   • deliver superior image quality compared to other manufacturers' models with comparable

24      image sensors;

25   • offer faster and more powerful auto focus than ever before, faster image processing,

26      longer battery life, and the ability to record three-minute movie clips with sound; and

27

28

4

1     •   combine the roles of image processing and camera function control into one chip,

2        resulting in faster display and write times for each image and lower power consumption,

3        which extends battery life.

4        13.    Canon also advertised that the lenses in Class Cameras produce a super sharp high

5  resolution picture, are high performance, precision designed, precision tested, and that, because of

6  their compact nature, the drive/control mechanism is engineered at a greater level of precision

7  than for the lens Canon uses in its non-PowerShot models.

8        14.    Contrary to Canon's advertisements and representations and consumers'

9  reasonable expectations, the PowerShot digital cameras with DIGIC regularly display the "E18"

10  or "E50" errors on the digital display, and the camera is rendered inoperable (the "Defect").

11  According to Canon, the E50 error means that the memory card has failed to format and the E18

12  error means that there is a lens unit/lens cover error.

13       15.    Additionally, at the time of sale to Plaintiff and Class members, Canon knew that

14  Class Cameras were Defective, did not operate as advertised and represented, and did not

15  conform to consumers' reasonable expectations.  In fact, the Internet is replete with consumer

16  complaints concerning the Defect in the Canon PowerShot line of cameras dating as far back as

17  2002.  Similarly, the Customer Support section of Canon's website ranks the E18 and E50 errors

18  as the number one inquiry with the PowerShot cameras.   One website devoted exclusively to the

19  E18 error reports having 6,385 website visitors over a four month period.  Other websites opine

20  on various fixes.  One website is devoted exclusively to detailing a fix that consists of 36 steps

21  and necessitates disassembling the camera.  Nevertheless, knowing that Class Cameras are

22  Defective, Canon sold PowerShots without disclosing the Defect, continues to deny that Class

23  Cameras are Defective, and continues to repair or replace Class Cameras with Defective parts and

24  Defective cameras.

25       16.    Canon provides a written limited warranty with new PowerShots that warrants

26  against defect in materials or workmanship for one year from the date of purchase and that Canon

27  will repair or replace defective parts or defective cameras returned to Canon with new or

28  comparable rebuilt parts or exchange for a refurbished camera ("Limited Warranty").

17.     Canon provides consumers who complain within the warranty period with a repaired or refurbished camera containing the same Defect. In order to receive repairs under warranty however, consumers have to pay for the shipping of the camera to Canon. For persons outside of warranty, Canon states that it will repair the defect for $150-$300 or, at the consumer's option, the consumer can participate in Canon's PowerShot Upgrade Program whereby the consumer is offered a refurbished later model camera for a reduced price. The refurbished camera is equally Defective.

18.     Plaintiff purchased a PowerShot S400 with DIGIC in May 2003 for $384.15. Approximately two years later, Plaintiff's S400 displayed the E50 error code and ceased functioning. Plaintiff discovered that if she removed the memory card and formatted it multiple times she can get her camera to start functioning again. Plaintiff has to remove and format the memory card between 3-10 times to get her camera functioning again and plaintiff looses all the pictures stored on the memory card in the process. Plaintiff tried three different memory cards but the error appeared for each. Plaintiff contacted Canon for assistance complaining that she believed her camera was defective and that she knew four people with the same camera who were experiencing the E50 error problem. Canon responded by stating that she could get her camera repaired for $150 to $300 or she could participate in Canon's PowerShot Upgrade program whereby she could purchase a refurbished S500 for $199 plus $10 shipping. Plaintiff refused the repair because she could purchase a new S400 for $220. Plaintiff refused to participate in the PowerShot Upgrade program because Canon did not respond to her requests for assurance that the S500 did not suffer from the same defect and the warranty that came with the refurbished camera was shorter than the Limited Warranty. Consequently, Plaintiff purchased a digital camera from a different manufacturer.

19.     Canon's advertising and marketing materials concerning DIGIC were the same or substantially the same throughout the United States during the proposed Class. Canon provided Plaintiff and all Class members with the same or substantially the same Limited Warranty.

20.     A properly functioning PowerShot is a matter material to the purchase decisions of reasonable people, including Plaintiff and Class members.

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action on behalf of herself and all other similarly situated people as members of a Class defined as:

> All California residents who, on or after October 17, 2001,
>
> purchased a Canon PowerShot Digital Camera installed
>
> with a DIGIC circuit.

Excluded from the Class are all claims for personal injury and any purchaser of a PowerShot camera installed with DIGIC II. Also excluded from the Class are Canon; any affiliate, parent, or subsidiary of Canon; any entity in which Canon has a controlling interest; any officer, director, or employee of Canon; any successor or assign of Canon, anyone employed by counsel for Plaintiff in this action; and any Judge to whom this case is assigned as well as his or her immediate family.

22.     This action has been brought and may properly be maintained on behalf of the Class proposed above under the criteria of Federal Rule of Civil Procedure Rule 23, California Code of Civil Procedure section 382, and California Civil Code section 1781.

23.     **Numerosity.**  Members of the Class are so numerous that their individual joinder herein is impracticable.  Canon has sold millions of PowerShot cameras.  Although the exact number of Class and their addresses are unknown to Plaintiff, they are readily ascertainable from Canon's records.  Class members may be notified of the pendency of this action by mail, supplemented (if deemed necessary or appropriate by the Court) by published notice.

24.     **Existence and predominance of common questions.**  Common questions of law and fact exist as to all members of the Class and predominate over questions affecting only individual Class members.  These common questions include whether:

      a.     Canon engaged in misleading or fraudulent business practices by failing to disclose, inadequately disclosing, or concealing material information, including that Class Cameras are Defective;

      b.     Class Cameras are Defective;

      c.     DIGIC is Defective;

      d.     the lenses in Class Cameras are Defective;

7

e.    Canon made statements or engaged in business practices likely to deceive a reasonable person concerning the functionality of Class Cameras;

f.    Canon had a duty to Plaintiff and Class members to disclose that Class Cameras are Defective;

g.    Canon knew, should have known, or was reckless in not knowing that Class Cameras are Defective;

h.    as a result of Canon's concealment of and failure to disclose material facts, Plaintiff and Class members acted to their detriment by purchasing Class Cameras;

i.    Canon's advertisements and representations concerning the quality and functionality of Class Cameras have the capacity or tendency to deceive or mislead the public;

j.    repairing and replacing Class Cameras with Defective parts and cameras is a breach of Canon's Limited Warranty;

k.    Canon's misconduct alleged herein violated the Consumers Legal Remedies Act, the Unlawful, Unfair, and Fraudulent Business Practices Act, the Magnuson-Moss Warranty Act, and the Song-Beverly Consumer Warranty Act and constituted a breach of warranty; and

l.    Plaintiff and Class members are entitled to damages and equitable relief.

25.    **Typicality.** Plaintiff's claims are typical of the claims of the Class because, among other things, Plaintiff purchased a PowerShot installed with DIGIC that is Defective.

26.    **Adequacy.** Plaintiff is an adequate representative of the Class because her interests do not conflict with the interests of the members of the Class she seeks to represent. Plaintiff has retained counsel competent and experienced in complex class action litigation, and Plaintiff intends to prosecute this action vigorously. The interests of members of the Class will be fairly and adequately protected by Plaintiff and her counsel.

27.    In the alternative, the Class may be certified because:

(a)    the prosecution of separate actions by the individual members of the Class would create a risk of inconsistent or varying adjudication with respect to

1      individual Class members that would establish incompatible standards of

2      conduct for Canon;

3      (b)     the prosecution of separate actions by individual Class members would

4      create a risk of adjudications with respect to them which would, as a

5      practical matter, be dispositive of the interests of other Class members not

6      parties to the adjudications, or substantially impair or impede their ability

7      to protect their interests; and

8      (c)     Canon has acted or refused to act on grounds generally applicable to the

9      Class, thereby making appropriate final and injunctive relief with respect to

10      the members of the Class as a whole.

11      **FIRST CAUSE OF ACTION**

12      **(For violation of Consumers Legal Remedies Act)**

13      28.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged

14 herein. This claim is brought on behalf of Plaintiff and the Class against Canon.

15      ·29.     Class Cameras are "goods" under California Civil Code section 1761(a).

16      30.     Canon is a "person" under California Civil Code section 1761(c).

17      31.     Plaintiff and the other Class members are "consumers" under California Civil

18 Code Section 1761(d).

19      32.     The purchase of a Class Camera by Plaintiff and the Class members are

20 "transaction" under California Civil Code section 1761(e).

21      33.     As set forth herein, Canon's acts, practices, representations, omissions, and

22 courses of conduct with respect to the promotion, marketing, and sale of Class Cameras violates

23 section 1770 of the Consumers Legal Remedies Act in that: (a) Canon represented that its goods

24 have sponsorship, approval, characteristics, uses or benefits which they do not have; (b) Canon

25 advertised its goods with intent not to sell them as advertised; (c) Canon represented that a

26 transaction confers or involves rights, remedies, or obligations which it does not have or involve;

27 and (d) Canon represented that its goods have been supplied in accordance with a previous

28 representation when it has not.

34.    Canon's acts, practices, representations, omissions, and courses of conduct with respect to the promotion, marketing, and sale of Class Cameras intended to result or have resulted in the sale of Class Cameras to Plaintiff and the other Class members. A properly functioning camera is material to the purchase decisions of reasonable people, including Plaintiff and Class members.

35.    Pursuant to the provisions of California Civil Code § 1780, Plaintiff is entitled to restitution, specific performance and other appropriate equitable relief, an order enjoining Canon from the unlawful practices described herein, as well as recovery of attorneys' fees and costs of litigation.

## SECOND CAUSE OF ACTION

**(For violation of the Unlawful, Unfair, and Fraudulent Business Practices Act)**

36.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. This claim is brought on behalf of Plaintiff and the Class against Canon.

37.    The acts and practices engaged in by Canon, and described herein, constitute unlawful, unfair and fraudulent business practices, in that (1) Canon's practices, as described herein, violate the Consumers Legal Remedies Act; the Magnuson-Moss Act; the Song-Beverly Consumer Warranty Act; and California express warranty law, as set forth herein; (2) the justification for Canon's conduct is outweighed by the gravity of the consequences to Plaintiffs and Class members; (3) Canon's conduct is immoral, unethical, oppressive, unscrupulous or substantially injurious to Plaintiff and Class members; (4) the conduct of Canon, as well as its advertising and written and oral promotional materials and all other written and oral promotional statements, advertising materials, and efforts undertaken and disseminated by Canon constitutes fraudulent, untrue or misleading advertising in that such conduct or advertising is likely to deceive a reasonable person, or a person acting reasonably under the circumstances, including Plaintiff and Class members; and (5) Canon's practice as alleged herein, undermine or violate the stated policies underlying the Consumers Legal Remedies Act; the Magnuson-Moss Act; the Song-Beverly Consumer Warranty Act; and California express warranty law. Such conduct violates Business and Professions Code sections 17200 et seq.

10

CLASS ACTION COMPLAINT

1      38.    Canon's unlawful, unfair and fraudulent business acts and practices are described

2  herein and include, but are not limited to, the following:

3      (a)    failing to disclose, intentionally failing to disclose, recklessly failing to disclose,

4  and/or concealing material facts concerning Class Cameras, including that they are Defective;

5      (b)    marketing Class Cameras, with false, misleading, inaccurate or likely to deceive

6  advertisements and representations;

7      (c)    failing to honor its Limited Warranty; and

8      (d)    repairing and replacing Class cameras with equally Defective parts and cameras.

9      39.    Plaintiff and Class members have suffered injury in fact and have lost money and

10  property as a result of Canon's unlawful, unfair, or fraudulent practices because, among other

11  things, Plaintiff's and Class members' Class Cameras are rendered inoperable, Plaintiff and Class

12  members would not have bought Class Cameras at the prices they paid, or would not have bought

13  Class Cameras at all; Class members have wrongfully paid for repairs and shipping costs; and

14  Class members have purchased refurbished Canon cameras that they otherwise would not have

15  purchased.

16      40.    Plaintiff and Class members are entitled to equitable relief, including restitution,

17  disgorgement of all profits accruing to Canon because of its unlawful, unfair, fraudulent, and

18  deceptive practices, specific performance under the Limited Warranty, including a refund of the

19  purchase price, declaratory relief, attorney's fees and costs, and a permanent injunction enjoining

20  Canon from its unlawful, unfair, fraudulent and deceitful activity.

21  **THIRD CAUSE OF ACTION**

22  **(For violation of Magnuson-Moss Warranty Act)**

23      41.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged

24  herein. This claim is brought on behalf of Plaintiff and Class members against Canon.

25      42.    Class Cameras are consumer products under 15 U.S.C. section 2301(1).

26      43.    Plaintiff and the other Class members are consumers under 15 U.S.C.

27  section 2301(3).

28      44.    Canon is a supplier and a warrantor under 15 U.S.C. section 2301(4)-(5).

CLASS ACTION COMPLAINT

45.     Canon's Limited Warranty  is a written warranty under 15 U.S.C. 2301(6) that is part of the basis of the purchasing bargain.

46.     Plaintiff and the other Class members have been damaged by Canon's conduct as alleged herein.

47.     As alleged herein, Canon has been provided notice that Class Cameras are defective in material and workmanship and Canon has failed to comply with its obligation under the Limited Warranty by failing to fix defects in material or workmanship during the warranty period.  As a direct and proximate result of Canon's breach of express warranties, Plaintiff and Class members sustained damages and other losses in an amount to be determined at trial. Canon's conduct caused Plaintiff's and Class members' damages and accordingly Plaintiff and Class members are entitled to recover damages, attorneys' fees and costs, specific performance under the Limited Warranty, declaratory relief, and other legal and equitable remedies

## FOURTH CAUSE OF ACTION

### (For Violation of the Song-Beverly Consumer Warranty Act: Express Warranty)

48.     Plaintiff incorporates by reference and realleges all paragraphs previously alleged herein. This claim is brought on behalf of Plaintiff and the Class against Canon.

49.     Under the Song-Beverly Consumer Warranty Act, Plaintiff and class members are "buyers" of "consumer goods," namely purchasers of Class Cameras primarily for personal, family, and household purposes.  See Civ. Code § 1791(a), (b).  Canon is a "distributor," "manufacturer," and "retail seller" of Class Cameras.  See id. 1791 (e), (j), (i), (l).

50.     The Canon Limited Warranty issued by Canon is an express warranty under Civil Code Section 1791.2(a)(1).  The Canon Limited Warranty undertakes to preserve or maintain the utility or performance of Class Cameras and provides compensation if there is a failure in utility or performance.

51.     As alleged herein, Canon has been provided notice that Class Cameras are defective in material and workmanship and Canon has failed to comply with its obligation under the Limited Warranty by failing to fix defects in material or workmanship during the warranty period.  As a direct and proximate result of Canon's breach of express warranties, Plaintiff and

12

1  Class members sustained damages and other losses in an amount to be determined at trial.

2  Canon's conduct caused Plaintiff's and Class members' damages and accordingly Plaintiff and

3  Class members are entitled to recover damages, attorneys' fees and costs, specific performance

4  under the Limited Warranty, declaratory relief, and other legal and equitable remedies.

5  

### FIFTH CAUSE OF ACTION

6  **(For Violation of the Song-Beverly Consumer Warranty Act: Implied Warranty)**

7      52.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged

8  herein. This claim is brought on behalf of Plaintiff and the Class against Canon.

9      53.    Under the Song-Beverly Consumer Warranty Act, Plaintiff and Class members are

10  "buyers" of "consumer goods," namely purchasers of Class Cameras. See Civ. Code §§ 1791(a),

11  (b). Canon is a "distributor," "manufacturer," and "retail seller" of Class Cameras. See id. 1791

12  (e), (j), (i), (l).

13      54.    Canon's  affirmations of fact, promises and descriptions of Class Cameras were

14  part of the contract description.  Canon has breached the implied warranty of merchantability, in

15  that Class Cameras (a) are not fit for the ordinary purposes for which such goods are used, i.e.,

16  photography; (b) do not conform to the promises or affirmations of fact made in the owners'

17  manual, and in advertising and marketing materials; and (c) would not pass without objection in

18  the trade under the contract description because, among other things, Class Cameras are

19  Defective, Class Cameras cease to function, and Canon repairs and replaces Class Cameras with

20  Defective parts and cameras.

21      55.    Plaintiff and Class members have been damaged by Canon's breach of the implied

22  warranty of merchantability governing Class Cameras.  Therefore, Plaintiff and Class members

23  are entitled to legal and equitable relief against Canon, including damages, specific performance,

24  rescission, declaratory relief, attorneys' fees, costs of suit, and other relief as appropriate.

25  

### SIXTH CAUSE OF ACTION

26  **(For Breach of Express Warranty)**

27      56.    Plaintiff incorporates by reference and realleges all paragraphs previously alleged

28  herein. This claim is brought on behalf of Plaintiff and the Class against Canon.

13

CLASS ACTION COMPLAINT

57.   The Canon Limited Warranty issued by Canon is an express warranty and became part of the basis of the bargain.  The Canon Limited Warranty is an affirmation of fact, a promise, and undertakes to preserve or maintain the utility or performance of Class Cameras and provides compensation if there is a failure in utility or performance.

58.   As alleged herein, Canon has been provided notice that Class Cameras are defective in material and workmanship and Canon has failed to comply with its obligation under the Limited Warranty by failing to fix defects in material or workmanship during the warranty period.  As a direct and proximate result of Canon's breach of express warranties, Plaintiff and Class members sustained damages and other losses in an amount to be determined at trial. Canon's conduct caused Plaintiff's and Class members' damages and accordingly Plaintiff and Class members are entitled to recover damages, attorneys' fees and costs, specific performance under the Limited Warranty, declaratory relief, and other legal and equitable remedies.

## PRAYER FOR RELIEF

59.   WHEREFORE, Plaintiff requests of this Court the following relief, on behalf of herself and Class members:

A.   For an order certifying the Plaintiff Class and appointing Plaintiff and her counsel to represent the Plaintiff Class;

B.   Injunctive relief;

C.   Declaratory relief;

D.   Damages;

E.   Rescission;

F.   Restitution;

G.   Disgorgement of all profits obtained from unfair competition;

//

//

//

//

//

14

CLASS ACTION COMPLAINT

H.     Plaintiff's attorneys' fees and costs of suit, including expert-witness fees; and

I.     Such other relief as the Court may deem proper.

### DEMAND FOR JURY TRIAL

Plaintiff hereby demands a trial by jury on all claims so triable.

DATED: October 17, 2005

**GIRARD GIBBS & De BARTOLOMEO LLP**

By: _____
        Dylan Hughes

Eric H. Gibbs
601 California Street, Suite 1400
San Francisco, California 94104
Telephone: (415) 981-4800
Facsimile: (415) 981-4846

Attorneys for Individual and Representative
Plaintiff Wing Law

15

**CLASS ACTION COMPLAINT**

**B**



**IN THE UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| DAVID HYMAN, DAVID NUGENT PATRICK MCQUAID and JAMES L. BRANSCUM, individually, and on behalf of all others similarly situated,<br><br>    Plaintiffs,<br><br>  v.<br><br>CANON U.S.A. INCORPORATED,<br><br>    Defendant. | CASE NO.: 05 cv 7233 (JSR)<br><br>**JURY TRIAL DEMANDED** |

## CONSOLIDATED AMENDED CLASS ACTION COMPLAINT

Plaintiffs, David Hyman, David Nugent, Patrick McQuaid and James L. Branscum ("Plaintiffs") by and through their undersigned attorneys, hereby complain against Canon U.S.A., Inc. ("Canon" or "Defendant") on behalf of themselves and all others similarly situated as follows. Plaintiffs' allegations are based upon information and belief, except as to their own actions, which are based on knowledge. Plaintiffs' information and belief are based on the investigation of their counsel, and the facts that are a matter of public record, as follows:

## OVERVIEW

1.      Plaintiffs have filed this class action, on behalf of themselves and all others similarly situated to obtain damages, restitution, and injunctive relief for the Class from Canon.

2.      As alleged more fully herein, Canon defrauded consumers, breached its implied warranty of merchantability, failed to disclose the defect inherent in the Cameras (as defined

herein) and consequently was unjustly enriched by selling the Cameras with a design defect, a material fact that was not known to Plaintiffs and members of the Class (as defined herein).

3.     Though faced with mounting consumer complaints concerning the Cameras, Canon has failed and refused to remedy the defect inherent in the Cameras.  Instead, Canon has sits silent while consumers unknowingly continue to purchase defective Cameras.

4.     Furthermore, although the Cameras come with a one-year limited warranty, Canon charges its customers a minimum of $150 to repair the camera after the warranty period is over.  Additionally, Canon has an "upgrade" system, whereby Canon will "upgrade" the Camera with a refurbished Camera for $175 if consumers agree to return their old and inoperable Camera.  As a result, Canon further profits on the sale of its defective Cameras by charging consumers high repair or replacement fees.

5.     Canon has neither issued a recall nor informed purchasers of the Cameras about the inherent defect in the Cameras.

6.     Plaintiffs seek actual damages and equitable relief, including the replacement and/or recall of the Cameras, civil penalties, costs and expenses of litigation, including attorneys' fees, and all other relief the Court deems appropriate.

## THE PARTIES

7.     Plaintiff Hyman is a citizen of the State of Florida and a resident of Dade County, Florida.  Plaintiff Hyman purchased a Canon PowerShot S400 Camera in December 2003.  Plaintiff Hyman's Canon Powershot S400 Camera ceased functioning in January 2005, after his S400 displayed a "Memory Card Error" on its LCD screen.

8.     Plaintiff Nugent is a citizen of the State of New York and a resident of New York County, New York.  Plaintiff Nugent purchased a Canon PowerShot S400 Camera in

March 2003.   Plaintiff Nugent's Powershot Canon S400 Camera ceased functioning in June 2005, after his S400 displayed an "E18" error on its LCD screen.

9.      Plaintiff Patrick McQuaid is a citizen of the State of New York and a resident of Erie, County, New York.  Plaintiff McQuaid purchased a Canon PowerShot S400 Camera in May 2003.  Plaintiff McQuaid's Powershot Canon S400 Camera ceased functioning in June 2005, after his S400 displayed an "E18" error on its LCD screen.

10.      Plaintiff James L. Branscum is a citizen of the State of Arkansas and a resident of Mississippi County, Arkansas.  Plaintiff Branscum purchased a Canon PowerShot A400 Camera in December 2004.  Plaintiff Branscum's Powershot Canon A400 Camera ceased functioning properly after his LCD screen went dull.

11.      Defendant Canon U.S.A., Inc. is a New York Corporation with its principal place of business located at 1 Canon Plaza, Lake Success, New York, 11042.  Defendant Canon is the U.S. arm of the Japanese company, Canon Inc., and accounts for about one-third of the parent company's sales.  Defendant Canon operates through more than 30 offices across North, South, and Central America and the Caribbean and specializes in office and consumer imaging equipment including cameras.   Canon is engaged in the business of marketing and selling consumer products through various retailers throughout the country and designs, manufactures, markets and sells digital cameras through various retail outlets throughout the Untied States.

## JURISDICTION AND VENUE

12.      This action is within the original jurisdiction of this Court by virtue of 28 U.S.C. § 1332(d)(2).  The matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs and members of the proposed Class are citizens of a different state from Defendant Canon.

13.     Venue is proper in this District under 28 U.S.C. § 1391. Canon conducts substantial business activity, including advertising, marketing, distribution, and the sale of Cameras, at locations throughout this District.

## CLASS ACTION ALLEGATIONS

14.     Plaintiffs bring this class action pursuant to Federal Rule of Civil Procedure 23 on behalf of themselves and all others similarly situated, with the Class being defined as all persons who purchased a Canon digital camera equipped with Canon's Digital Imaging Core, DIGIC, (the "Cameras") during the period of August 15, 1999 through August 15, 2005 (the "Class" and the "Class Period" respectively).

15.     The members of the Class are so numerous that joinder of all members would be impracticable.  Plaintiffs estimate that there are several thousand purchasers of the products at issue.

16.     There are questions of law and fact common to the members of the Class that predominate over any questions affecting only individual members, including:

a.     Whether the Cameras are of merchantable quality;

b.     Whether the defect inherent in the Cameras caused the Cameras to be non-merchantable;

c.     Whether Canon breached its implied warranty to the Class for the Cameras;

d.     Whether Canon was unjustly enriched by its sales of defective Cameras;

e.     Whether failing to disclose the defect inherent in the Cameras, a material fact of which Canon was aware, constitutes a deceptive trade practice in violation of New York General Business Law § 349;

4

f.      Whether the sale of defective Cameras constitutes a deceptive trade practice in violation of New York General Business Law § 349;

g.      Whether Canon's failure to disclose the defect inherent in the Cameras constitutes a negligent misrepresentation; and

h.      Whether, as a result of Canon's misconduct, Plaintiffs and the Class are entitled to damages, equitable relief and/or other relief, and the amount and nature of such relief.

17.     The claims of Plaintiffs are typical of the claims of the Class because Plaintiffs, like all members of the Class, purchased defective Cameras.  Plaintiffs have no interests antagonistic to those of the Class, and Canon has no defenses unique to Plaintiffs.

18.     Plaintiffs will fairly and adequately protect the interests of the Class and have retained attorneys experienced in class and complex litigation.

19.     A class action is superior to other available methods for the fair and efficient adjudication of this controversy for the following reasons:

a.      It is economically impractical for members of the Class to prosecute individual actions because the damages suffered by each Class member may be relatively small, thus the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually and the burden imposed on the judicial system would be enormous;

b.      The Class is readily ascertainable and definable; and

c.      Prosecution as a class action will eliminate the possibility of repetitious litigation.

20.     Plaintiffs do not anticipate any difficulty in the management of this litigation.

## SUBSTANTIVE ALLEGATIONS

### The Digital Camera Market

21.     According to a study published by InfoTrends/CAP Ventures in December 2004, worldwide digital camera revenue was forecast to reach $24 billion in 2004, and grow to $31 billion in 2009. The top three regions for digital camera sales in 2004 were Europe, the United States and Japan.

22.     Canon made its debut in the digital camera market in July of 1996 when it introduced the PowerShot 600.  To date, Canon has released more than 50 additional PowerShot digital models.

23.     Notably, in February 2003, Canon announced the introduction of 5 new PowerShot Cameras.  In a press release Canon stated, "[t]he introduction of five new PowerShot digital cameras is one of the most aggressive product announcements Canon has made in recent memory, and a clear indication of our desire to become the preferred brand of digital cameras among consumers."

24.     In April of 2003, Canon's Marketing president and CEO announced that "[c]urrently, Canon is one of the leaders in the digital camera market with 24% market share."

25.     According to Form 20-F/A filed by Canon, Inc. on December 22, 2004, with the introduction of six new PowerShot Cameras in 2003, Canon "finally reached the top position in the industry, in unit sales basis."

**A Primer On Digital Camera Technology**

26.    Digital cameras differ from traditional cameras in that they replace film with an image sensor and digital image processor that converts light into electronic signals to record images as digital data.

27.    The lens of a digital camera gathers light and forms an image on the image sensor.

28.    Specifically, the image sensor is comprised of a collection of tiny light-sensitive diodes, which accumulate electrical charges (electrons) when they are hit with light particles (photons). These diodes are called photosites. Each photosite is sensitive to light -- the brighter the light that hits a single photosite, the greater the electrical charge that will accumulate at that site.

29.    The digital image processor converts the electronic color signals from the image sensor into digital signals.   More technically, the image sensor converts the image from light waves into an analog electrical signal. The analog signal is then run through an analog to digital converter (A-D Converter), where it becomes a pure digital signal.  Then it is again put through a series of electronic filters that adjust the white balance, color, and aliasing of the image.

30.    The amount of detail that the camera can capture is called the resolution, and it is measured in picture elements known as pixels, which are laid out in an array with rows and columns. The more pixels the camera has, the more detail it can capture.

31.    A compression cycle then shrinks the image as small as possible by dumping unnecessary pixels for more efficient storage.

32.    The image is then transferred into a temporary storage area inside the camera called the "buffer." When the buffer is full, the image is written out to a memory card.

33.    The main elements of the digital camera, as described herein, are reflected below in Figure 1.

**Figure 1**



**Shutter Button/Zoom Lever**

**Memory Card**
CompactFlash and SD memory cards enable storage of large volumes of image data

**CCD (charge-coupled device)**
Adopts a primary color filter for vivid color reproduction

**Digital Imaging Engine**
Dedicated processor making possible high-speed, high-quality image data processing

**Lens Unit**
Ultracompact lens unit using a glass molded aspherical lens (including a UA lens). (There are also lens units not using glass molded lenses.)

34.    The Cameras all utilize this same basic design.

**Canon's DIGIC Technology**

35.    Early in the development of Canon's digital cameras, Canon realized that it would be necessary to develop its own specialized image processor.

36.    Canon's first digital image processing integrated circuit ("IC") made its debut in 1999.  Canon developed the Digital Signal Processing ("DSP") IC that was capable of both high-speed processing and high image quality.  Two disadvantages with DSP IC, however, were the high cost and difficulty in programming.

37.    In 2002, Canon announced its next major advancement in an image processor: Digital Imaging Core, more commonly known as "DIGIC."

38.    Each of the Cameras comes equipped with DIGIC.

39.     Canon described its DIGIC as the "brains" of its digital cameras.  Not only does the DIGIC image processor control image quality, but according to Canon it "packs almost every function needed in a digital camera into one chip: JPEG compression/expansion; memory card control; AE (Auto Exposure); AF (Auto Focus); AWB (Auto White Balance) Control and more."

40.     As reported in an August 11, 2003 New Straits Times-Management Times article entitled "New Canon Cameras With DIGIC Technology," "DIGIC is a Canon-proprietary imaging processor chip which combines image processing and camera function control."

41.     DIGIC's full capabilities are more accurately represented in Figure 2 below.

**Figure 2**



42.     In the highly competitive market of digital cameras, Canon sought to use DIGIC as a means of differentiation between it and its competitors.  As reported in a May 12, 2003 Brandweek article entitled "Strategy: Canon Touts 'DIGIC' as Digital Camera's Best Friend, Backed by $42M Effort," Michael Zorich, director of marketing for Canon's consumer imaging group, stated 'DIGIC is a point of differentiation largely because many consumers are interested in buying digital cameras, knowing nothing except the number of pixels inside the camera.'

43.     Further, as reported in a March 27, 2003 Global News Wire article entitled, "Canon is banking on its Digital Imaging Core (DIGIC), a state of the art microprocessor, to drive its camera revenues this year and figure largely in its aim to control at least 30 percent of the local digital camera market."

44.     As evidence that Canon had a great deal at stake with DIGIC, Canon spent $15 million more advertising DIGIC than it spent on advertising all of its digital cameras and camcorders in the previous year, and almost half of what it spent on advertising all of its products in 2002. As reported in the May 12, 2003 Brandweek article, Canon "[sunk] more than $42 million into the new (DIGIC) campaign, which would amount to $15 million more than Canon spent promoting its digital cameras and camcorders last year, per TNS/CMR. Overall, Canon, which also markets printers and traditional cameras, spent $101 million on media in 2002."

45.     As explained more fully herein, the DIGIC processor is defective. Yet, despite such defect, Canon refused to publicly acknowledge such defect and failed to inform consumers that such defect renders the Cameras inoperable.

**Canon's "DIGIC" Camera Chips Are Defective**

46.     Significantly, DIGIC, as the "brains" of the Cameras, controls, among other things, the Cameras' memory cards, Auto Focus and LCD/CCD displays. As evidence of DIGIC's defective nature, consumers have experienced failures with their memory cards, Auto Focus, and/or LCD/CCD displays.

**Memory Card Errors**

47.    Unbeknownst to members of the Class, defective DIGIC chips cause the Cameras to display the message "Memory Card Error!" on the Cameras' LCD screen, rendering the Cameras inoperable.

48.    Specifically, when the "Memory Card Error!" message appears, the customer cannot take, view, record or download pictures.

49.    Numerous complaints from members of the Class confirm the widespread nature of the "Memory Card Error!" For example:

    a.    "Canon A60 memory card error – I shot dozens of pics of furniture I had donated for a tax write-off and before I could download them, **I got a memory card error message.**" (http://www.photo.net/bboard/q-and-a-fetch-msg?msg_id=00D3df) (emphasis added).

    b.    " My son has a Canon A60 which he has enjoyed for a year and a half. **He recently took some photos, went to download them onto his laptop, and poof... they were gone.  The message on the lcd screen reads "memory card error."** (http://www.stevesforum.com/forum/view_topic.php?id=40709&forum_id=52&highlight=Memory+Card+Error) (emphasis added).

    c.    "I've owned this camera [Canon A70] for two years now...After I reinserted the CF card back into the camera, the camera refused to take pictures.  I had the camera reformat the flash card and still wouldn't take pictures.  **I tried another CF card and it wont [sic.]take pictures on that either.  New batteries didn't help.  Canon says that the repair will cost $200.**  Gee, thanks guys...." (http://www.amazon.com/gp/product/customer-reviews/B00008OE5G/ref=cm_rev_next/104-2068019-8648734?%5Fencoding=UTF8&customer-reviews.sort%5Fby=%2BOverallRating&n=502394&s=photo&customer-reviews.start=41) (emphasis added).

    d.    "Started up my brand new A85 with the CF card that came in the box and it reported a memory card error, formatting causes the camera to shut down with "E50" displayed on the screen.  **I bought another CF card, but the same problem still happens.**" (http://photography-on-the.net/forum/archive/index.php/t-57393.html) (emphasis added).

11

e. "Seriously hope one of you can help me…my camera [S50] is giving me this 'Memory Card Error'. I've got two cards and tested it with another and all of them just give me the memory card error. **All the functions freeze up and I have to remove the battery to switch off the camera.** Formatted the card but still not working… Please help…" (http://www.stevesforum.com/forum/view_topic.php?id=40709&forum_id=52&highlight=Memory+Card+Error) (emphasis added).

f. "My girlfriend's Canon S230 PowerShot camera uses the 128 mb PNY flashcard. Recently we started getting errors. **The memory gets corrupted and we lose pictures – lots!  It also becomes a problem to download the remaining pictures as we are forced to download one at a time.**" (http://www.amazon.com/gp/product/customer- reviews/B00006HW3O/104-2068019-8648734?%5Fencoding=UTF8&me=ATVPDKIKX0DER) (emphasis added).

g. "I have had my Canon Elph S400 for about 16 months. **A couple months ago (right after the warranty expired) I started to get 'Memory Card Error' messages, regardless of what memory card I used. I couldn't take, view or download pictures…Canon shrugs and suggests paying for the repair…But it's $150 to $300 (Canon's estimate) to repair…**" (http://www.stevesforums.com/forums/view_topic.php?id=38477&forum_id=15&highlight=s400+Memory+Card+Error) (emphasis added).

h. "I'm also getting the 'memory card error' on my Canon S400. **The error persists after formatting the card in the camera. The computer does not recognize that the camera is even connected. This is outrageous!**" (http://www.stevesforums.com/forums/view_topic.php?id=38477&forum_id=15&highlight=s400+Memory+Card+Error) (emphasis added).

i. "I thought my camera was the only one that broke down with a 'memory card error' message after 14-16 months (after the warranty period)…For the first year and several months all was well, and then it came…MEMORY CARD ERROR… sometimes the message would go away and I'd think the problem was temporary and over. So I'd take many, many pictures, and then the very next day, the message came back, and ALL OF MY PICTURES WERE GONE. It erased all of my pictures…even with new memory cards it didn't work…so obviously it's the camera that's the problem.  Buyers beware!" (http://www.amazon.com/gp/product/customerreviews/B00008OE6I/ref=cm_cr_dp_2_1/002-0910807-5275263?%5Fencoding=UTF8&s=photo) (emphasis added).

j. "The S400 worked great for the first year. **Then it started having memory card errors and erasing my pictures.  I bought new memory cards hoping that was the problem, but it continued to happen**…I hope the upgrade lasts longer for all the money I have spent over the last 15 months, $400 for the original camera and

now $200 for an upgrade."
(http://www.amazon.com/gp/product/customerreviews/B00008OE6I/ref=cm_cr_d
p_2_1/002-0910807-5275263?%5Fencoding=UTF8&s=photo) (emphasis added).

k.  "…I have this type of camera, only the name is different (Canon IXUS 400 – but
    it's the same [as S400]).  **I bought it last November, and now (after warranty
    of [course]) I also have the 'Memory card error' problem…First, when I got
    this error message,** I put out the battery, the CF card, put it back, turned the
    camera off, than on and the error was gone. But it came back again and again.
    When I last time got the error message, I couldn't turn off the camera, when the
    CF card was inserted."
    (http://www.amazon.com/gp/product/customerreviews/B00008OE6I/ref=cm_cr_d
    p_2_1/002-0910807-5275263?%5Fencoding=UTF8&s=photo) (emphasis added).

l.  **"Guys, same story here: 'Memory Card Error' after about 14 months of
    ownership [S400].** I've been in contact with Canon about this and they are
    turning a blind eye, basically."
    (http://www.amazon.com/gp/product/customerreviews/B00008OE6I/ref=cm_cr_d
    p_2_1/002-0910807-5275263?%5Fencoding=UTF8&s=photo) (emphasis added).

m.  **"I recently purchased this camera [Canon S410]…I had it two weeks when it
    began to display "Memory Card Error" and would not store any of my
    pictures.** I don't have a problem with that same memory card in my other
    camera…I have since returned it but wish I had listened to the reviews on this
    camera." (http://www.softforall.com/store/Reviews-B0001G6U5M-4.html)
    (emphasis added).

n.  **"Out of the box, this camera [Canon SD100] does not work.  There's a
    compatibility problem with the SD card [Secure Digital Memory card],** and
    Canon wants you to either send the camera to them or download a firmware
    update from the web… [quoting from Canon's website] 'The SD Card
    compatibility problem – A compatibility problem has been found between
    PowerShot SD100 DIGITAL ELPH/DIGITAL IXUS II camera and some SD card
    from other manufacturers. We apologize for any inconvenience you may have
    already experienced because of this problem. (Problem Description) The
    (Memory card error!) message appears on the LCD monitor when the camera is
    powered on in Shooting mode.  Image replay is impossible.  The (No image),
    (Corrupted Data), (Memory card error!) or (E51) message appears on the LCD
    monitor when you try to view images recorded on the SD card in the camera's
    Replay mode.'" (http://www.amazon.com/gp/product/customer-
    reviews/B00009Q96Z/ref=cm_rev_sort/104-2068019-8648734?customer-
    reviews.sort_by=%2BOverallRating&s=photo&x=7&y=12) (emphasis added).

### "E18" Error Message

50.     The defective DIGIC processor also causes irreparable problems with the Cameras' Auto Focus.

51.     Auto focus, which involves the automatic movement of the lens from an "in" to an "out" position, is controlled by DIGIC.

52.     Members of the Class who have encountered the notorious "E18 Error" message experience a situation in which the lens of the Camera does not fully extend or retract, thus preventing the customer from taking, viewing or downloading pictures.

53.     As with the "Memory Card Error!," there are numerous complaints from members of the Class which confirm the widespread nature of the "E18" error  For example:

   a.   "I had an Canon A60 and after about a year and a half, **without warning the lens would not extend and E18 error appeared in the lower left corner of the LCD.**" (http://www.dcresource.com/forums/showthread.php?t=3810&page=2) (emphasis added).

   b.   "I had my A60 for 15 months.  **One day, out of the blue – E18 errors.  None of the suggested fixes worked.**" (http://www.dcresource.com/forums/showthread.pho?t=3810&page=17) (emphasis added).

   c.   "**I'm afraid to say it but my Canon A70 just died.  You guessed E18 error message and the lens won't close all the way.  I had no idea these cameras had this problem until yesterday when mine died and I started searching the net.  The camera is 14 months old and [C]anon won't do a thing about it, other than charge me $150 to fix it.**" (http://www.dcresource.com/forums/showthread.php?t=3810&page=2) (emphasis added).

   d.   "Sounds like there are several people out there like me… Found this thread while searching the web after getting the E18 error on my A70.  Had it about 14 months, I still have to check the warranty…**Turned it on, then when I turned it off and it wouldn't retract fully, and then showed the E18 error.  Sounds like a real design flaw by Canon to me!**" (http://www.dcresource.com/forums/showthread.php?t=3810&page=9) (emphasis added).

e. "**Unfortunately, quality of this camera [A75] is suspect. After 6 weeks of ownership, I got the dreaded E18 error. There is nothing you can do about this, and the user manual even states that you would have to get the camera serviced. Do a Google on the Canon E18 error and you will see many frustrated Canon A75 owners.**"
(http://www.epinions.com/content_160241323652) (emphasis added).

f. "**Got the A75 for Christmas and after seven months and hundreds of great pictures the camera has coughed up the E18 error.** It was working great, I switched CF cards and E18!"
(http://www.dcresource.com/forums/showthread.php?p=63166#post63166) (emphasis added).

g. "...I think that I might have the dubious distinction of being the first person to report an A80 to have failed...**When powering the camera on, the lens extracts, the Canon opening screen is displayed and then the lens quickly retracts, the screen goes black and in a few seconds E18 appears (lower left in the screen) and the camera promptly powers off.**"
(http://www.dcresource.com/forums/showthread.php?t=3810&page=8) (emphasis added).

h. "I own a Canon A80 since Dec. 2003 and I have had no problems until Mar. 2005. **After a security check (international travel), I got the dreaded E18 error. The camera has been handled with a lot of care and well maintained until then. I could not explain why I got that problem.**"
(http://www.dcresource.com/forums/showthread.php?t=3810&page=12) (emphasis added).

i. "Our Canon S400 was purchased around June 2003 (along with a padded carrying case and extra battery). **Yesterday, after taking a round of indoor shots and short videos, we turned it back on and the lens stopped partway through extending, paused, retracted fully and the screen went black with an 'E18' in the lower left corner. Shortly after this, the camera powered itself off completely...**"
(http://www.dcresource.com/forums/showthread.php?t=3810&page=3) (emphasis added).

j. "I had a Canon S400 a gift from friends before my 1 year trip to China. **I had experienced intermittent E18 problems, but was always able to resolve them by turning the camera on/off. Soon after the warranty expired, it stopped working completely (E18).**"
(http://www.dcresource.com/forums/showthread.php?t=3810&page=13) (emphasis added).

15

k. **"I got the SD300 the week it was released here in NYC in November after eagerly awaiting its release.  Within 3 weeks... the camera failed with the E18 message...** The camera was not dropped or bumped or exposed to sand...When the problem started, the camera would power up, then the error E18 would display and the camera would shut off, very quickly.  Never got a low battery in[d]icator."
(http://www.dcresource.com/forums/showthread.php?t=3810&page=14) (emphasis added).

l. [PowerShot SD300] **"Count me among the unlucky recipients of the E18 code. Lens will almost retract all the way but the bounces back out."**
(http://www.dcresource.com/forums/showthread.pho?t=3810&page=16) (emphasis added).

m. "...Got my IXUS 400 in December 2003, means that I've got my camera for 15 mths, that is 3 months past warranty... E18 error just happened after my Thailand trip, thankfully...**Tried to power up in the camera mode by the lens refuse[d] to advance fully, then the E18 error appears at the lower left corner of the screen, afterwhich it promptly shuts down."**
(http://www.dcresource.com/forums/showthread.php?t=3810&page=9) (emphasis added).

n. **"Well I don't see how it's a myth, I've had an IXUS 400 [since] Christmas and on Friday night it stopped and flashed up E18 on the screen.** The [lens] stuck out and the only way I could get it in was to pull the battery out at the moment [it] readjusted to [it]."
(http://www.dcresource.com/forums/showthread.php?t=3810&page=15) (emphasis added).

o. **My son was born 5 days ago and when I took out the camera (powershot s400) to take pictures immediately after he was born, I got an E18 error.  I could not get rid of it.  I tried fresh batteries but still the same error pops up.** Canon asks $175 for a refurbished A410 and $155 for repairing my camera.  I used to be a Canon product fan but after this, I'm not anymore.
(http://www.engadget.com/entry/1234000887028377/)(emphasis added).

p. **My Canon s400 is one month shy of two years.  I received the dreaded E18 just two days ago.**  After reading all of the posts on the web, I will not even bother to contact Canon as I will not pay the going price of about $155 to repair the camera.  Very disappointed as I thought I had done all the research.  Up until now, I loved the camera, but definitely will not buy another Canon.
(http://www.engadget.com/entry/1234000887028377/) (emphasis added).

### LCD/CCD Display Errors

54.     The defective DIGIC processor also causes irreparable problems with the Cameras' LCD/CCD displays.

55.     Without warning, the LCD/CCD screens of the Cameras go dull or completely shut down, turning the screens totally black.

56.     As with the "Memory Card" and "E18" errors, the numerous complaints from members of the Class confirm the widespread nature of the LCD/CCD display error.   For example:

a.  "After almost 2 years I've developed the infamous CCD problem. **Dark screen**. Now my 300.00 camera is a paper weight. Is it possible to get this part and install it myself? Thanks Cannon for making an expensive disposable camera." (http://www.digitalcamera-hq.com/canon-powershot-a70-reviews.html) (emphasis added).

b.  **"Like Everyone else in your reviews, I am having the same blackscreen problem.** My Camera was purchased in the US by my wife as a gift. 15 months later it is a disposable. Does Canon realize that this will harm their image or is it that they don't care about their image. I will not be buying another CANON camera nor will I pay over $100 to fix this junk." (http://www.digitalcamera-hq.com/canon-powershot-a70-reviews.html) (emphasis added).

c.  **"I came to this site trying to find a way to contact Canon customer service about my camera screen going black the other day. After reading all these posts I see that this is a common problem.** I would rather buy a new camera than put another $100 or more into this one. I think I'll just use the view finder and ignore the screen for now and if and when the camera dies, I'll buy another brand. A two year old camera should not require major repair work!" (http://www.digitalcamera-hq.com/canon-powershot-a70-reviews.html) (emphasis added).

d.  "I give this camera a terrible rating simpley [sic.] because when a $350 camera only works for just over a year and a half, that's terrible. **I get the same horizontal lines, black pictures with lines, purple pictures with lines as everyone else.** When it worked it was great, but it looks to me like this camera has a 2 year life span max." (http://www.digitalcamera-hq.com/canon-powershot-a70-reviews.html) (emphasis added)

17

57.     As a result of the defective nature of the Cameras, exemplified by the "Memory Card Error," the "E18 Error" and the LCD/CCD display errors, members of the Class have been damaged.

58.     Furthermore, although the Cameras come with a one-year limited warranty, Canon charges its customers a minimum of $150 to repair the camera after the warranty period is over.  Additionally, Canon has an "upgrade" system, whereby Canon will "upgrade" the Camera with a refurbished Camera for $175 if consumers agree to return their old and inoperable Camera.  As a result, Canon further profits on the sale of its defective Cameras by charging consumers high repair or replacement fees.

59.     Significantly, Canon had direct knowledge of the defect in DIGIC during the Class Period, based on, at the very least, the numerous complaints Canon received concerning the Cameras.

60.     Despite Canon's knowledge, Canon failed to disclose to Plaintiffs and members of the Class that DIGIC is defective, as evidenced by the "Memory Card," "E18" and LCD/CCD display errors.

61.     Canon's failure to disclose the fact that DIGIC is defective is an omission of material fact in that Plaintiffs would not have purchased the Cameras had they known of the defect.

62.     Furthermore, Despite Canon's knowledge of the defect inherent in the Cameras, Canon continues to sell the Cameras.

18

## COUNT I

**(By Plaintiffs Nugent and McQuaid, individually, and on behalf of all similarly situated residents of Arkansas; California; Colorado; Connecticut; Hawaii; Indiana; Iowa; Michigan; Mississippi; Missouri; Nebraska; New Hampshire; New Jersey; New York; Oklahoma; Vermont; and West Virginia For Unjust Enrichment).**

63.     Plaintiffs reallege each and every allegation contained in the above paragraphs of this Complaint as if fully set forth herein.

64.     During the Class Period, Canon manufactured the Cameras, which are defective as a result of the DIGIC image processor.

65.     As a result of the defect, members of the Class have experienced "Memory Card," "E18" errors and errors with their LCD/CCD display screens.

66.     Canon has knowledge of the design defect in the Cameras as a result of the numerous complaints that it has received from its customers.

67.     Despite Canon's knowledge of the design defect in the Cameras, Canon has refused to inform consumers of the design defect -- a material fact-- and/or issue a recall of the Cameras.

68.     During the Class Period, Plaintiffs and members of the Class conferred upon Canon, without knowledge of the design defect, payment for their Cameras, benefits which were non-gratuitous.

69.     Canon accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite Canon's knowledge of the design defect in the Cameras. Retaining the non-gratuitous benefits conferred upon Canon by Plaintiff and the Class under these circumstances made Canon's retention of the non-gratuitous benefits unjust and inequitable.

70.     Because Canon's retention of the non-gratuitous benefits conferred by Plaintiffs and members of the Class is unjust and inequitable, Canon must pay restitution in a manner established by the Court.

## COUNT II

**(By Plaintiff Hyman, individually, and on behalf of all similarly situated residents of Alaska, District of Columbia, Florida, Georgia; Kansas, Kentucky Maine, Minnesota, Nevada, New Mexico, North Carolina, Ohio, Oregon, Pennsylvania, Rhode Island, South Carolina, South Dakota, Utah, Virginia, Washington and Wisconsin For Unjust Enrichment)**

71.     Plaintiff Hyman realleges each and every allegation contained in paragraphs 1-62 of this Complaint as if fully set forth herein.

72.     During the Class Period, Canon manufactured the Cameras, which are defective as a result of the DIGIC image processor.

73.     As a result of the defect, members of the Class have experienced "Memory Card," "E18" errors and errors with their LCD/CCD display screens.

74.     Canon has knowledge of the design defect in the Cameras as a result of the numerous complaints that it has received from its customers.

75.     Despite Canon's knowledge of the design defect in the Cameras, Canon has refused to inform consumers of the design defect -- a material fact-- and/or issue a recall of the Cameras.

76.     During the Class Period, Plaintiffs and members of the Class conferred upon Canon, without knowledge of the design defect, payment for their Cameras, benefits which were non-gratuitous.

77.     During the Class Period, Canon appreciated, or had knowledge of the non-gratuitous benefits conferred upon it by Plaintiff and members of the Class.

78.     Canon accepted or retained the non-gratuitous benefits conferred by Plaintiffs and members of the Class despite Canon's knowledge of the design defect in the Cameras. Retaining the non-gratuitous benefits conferred upon Canon by Plaintiff and the Class under these circumstances made Canon's retention of the non-gratuitous benefits unjust and inequitable.

79.     Because Canon's retention of the non-gratuitous benefits conferred by Plaintiff and members of the Class is unjust and inequitable, Canon must pay restitution in a manner established by the Court.

## COUNT III

**(By Plaintiff Branscum, individually, and on behalf of all similarly situated residents of on behalf of residents of: Alaska; Arkansas; Colorado; Delaware; Hawaii; Iowa; Louisiana; Maine; Maryland; Massachusetts; Minnesota; Mississippi; Montana; Nebraska; Nevada; New Hampshire; New Jersey; North Dakota; Oklahoma; Rhode Island; South Carolina; South Dakota; Virginia; West Virginia; Wyoming and purchasers of new Cameras in Texas For Breach of Implied Warranty of Merchantability)**

80.     Plaintiff realleges each and every allegation contained in paragraphs 1-62 of this Complaint as if fully set forth herein.

81.     At all times, there were in effect the following statutes governing the implied warranty of merchantability: Alaska Stat. § 45.02.314; Ark. Code Ann § 4-2-314; CRS § 4-2-314; 6 Del. C. § 2-314; HRS § 490:2-314; § 554.2314; 11 M.R.S.A. § 2-314; Md. Code Ann. Art. 95B § 2-314; Mass. Gen. Laws. Ch. 106 § 2-314; Minn. Stat. § 336.2-314; Miss. Code. Ann. § 75-2-314; MCA 30-2-314; Neb. UCC 2-314; NRS 104.2314; RSA 382-A:2-314; N.J.S.A. 12A:2-314; NDCC 2-314; O.S. 1991 § 2-314; G.L. 1956 §6A-2-314; S.C. Code Ann. § 36-2-314; SDCL 57A-2-314; VA. Code § 8.2-314; W. VA. Code § 46-2-314; Wyo. Stat. 34.1-2-314; and Tex. Bus. & Com. Code Ann. § 2-314.

21

82.   As a seller and manufacturer of Cameras, Canon is a "merchant," within the meaning of the various states' commercial codes governing the implied warranty of merchantability.

83.   The Cameras are "goods," as defined in various states' commercial codes governing the implied warranty of merchantability.

84.   Implied in the sale of the Cameras is a warranty of merchantability that requires, among other things, that the Cameras pass without objection in the trade and are fit for the ordinary purposes for which the Cameras are used.

85.   Because the Cameras are defective due to the faulty DIGIC image processor as demonstrated by the "Memory Card," "E18" and LCD/CCD display screen errors, the Cameras are not able to function in their ordinary capacities and, therefore, are not merchantable as impliedly warranted by Canon.

86.   Any purported disclaimer of the implied warranty of merchantability on the part of Canon fails of its essential purpose.

87.   The defect in the Cameras rendered the Cameras not merchantable and thereby proximately caused Plaintiffs and Class members who purchased the Cameras to suffer economic damages in an amount to be ascertained at trial.

## COUNT IV

**(By Plaintiffs Nugent and McQuaid, individually, and on behalf of all similarly situated residents of the State of New York for Negligent Misrepresentation)**

88.   Plaintiffs reallege each and every allegation contained in paragraphs 1-62 of this Complaint as if fully set forth herein.

89.     Defendant Canon, through its negligence and carelessness proximately caused the omissions of material facts as set forth in this complaint, namely omissions concerning the defective nature of the Cameras due to DIGIC.

90.     Plaintiffs, at the time of Defendant Canon's omissions were ignorant of the defect in the Cameras, a material fact. Defendant Canon intended that Plaintiffs and the members of the Class rely on its omissions in an effort to induce Plaintiffs and Class members to purchase goods and/or services from Defendant.

91.     Had Plaintiffs and Class members known that the Cameras were defective they would not have purchased them.

92.     Plaintiffs and Class members have suffered damages as a direct and proximate result of Defendant Canon's negligent conduct.

## COUNT V

**(By Plaintiffs Nugent and McQuaid, individually, and on behalf of all similarly situated residents of the State of New York for violations of the General Business Law § 349)**

93.     Plaintiffs reallege each and every allegation contained in paragraphs 1-62 of this Complaint as if fully set forth herein.

94.     By its conduct, including the non-disclosure of material facts as alleged above, and the continued sale of the defective Cameras, Defendant has engaged and continues to engage in deceptive acts and practices in the conduct of business, trade and commerce, and in the furnishing of services within New York State, all in violation of New York General Business Law ("GBL") § 349.

95.     GBL § 349(h) provides in relevant part that:

> . . . any person who has been injured by reason of any violation of
> this section may bring an action in his own name to enjoin such

unlawful act or practice, [and] an action to recover his actual damages . . .

96.     Plaintiffs are "person[s] who have been injured" by reason of the Defendant's violation of GBL § 349.

97.     The above-referenced deceptive acts and practices, namely selling the defective Cameras to Plaintiffs and members of the Class, and failing to disclose the existence of the defect in the Cameras, have directly and proximately and forseeably resulted in damages to Plaintiffs and Class members, resulting in their costs of purchasing defective Cameras.

98.     Plaintiffs are therefore entitled to damages in an amount to be determined at trial.

WHEREFORE, Plaintiffs pray that the Court enter judgment and orders in their favor and against Canon as follows:

A.     An order certifying the Class and directing that this case proceed as a class action;

B.     Judgment in favor of Plaintiffs and the members of the Class in an amount of actual damages or restitution to be determined at trial;

C.     An order enjoining Defendant from the further sale of the Cameras;

D.     An order granting reasonable attorneys' fees and costs, as well as pre- and post-judgment interest at the maximum legal rate; and

E.     Such other and further relief as this Court may deem appropriate.

## DEMAND FOR TRIAL BY JURY

The Plaintiffs demand a trial by jury on all issues so triable as a matter of right.

Respectfully submitted this 7th day of October, 2005.

Plaintiffs David Hyman, David McQuaid
Patrick Nugent and James L. Branscum,

By:

Paul O. Paradis (PP 9935)
Gina M. Tufaro (GT 5419)
212 East 39th Street
New York, NY 10016
Telephone: (212) 889-3700

Richard J. Doherty
James M. Smith
**HORWITZ, HORWITZ &
ASSOCIATES**
25 East Washington Street
Suite 900
Chicago, Il 60602
Telephone: 312-372-8822

Plaintiffs' Proposed Co-Lead Counsel

Kevin P. Roddy
Jennifer Sarnelli
**WILENTZ, GOLDMAN &
SPITZER, P.A.**
90 Woodbridge Center Drive,
Suite 900
Woodbridge, NJ 07095-0958
Telephone: (732) 636-8000

W. Kelly Puls
Brant C. Martin
**PULS TAYLOR &
WOODSON**
2600 Airport Freeway
Fort Worth, TX 76111
(817) 338-1717

25

John G. Emerson
Scott E. Poynter
**EMERSON POYNTER LLP**
2228 Cottendale Ln.
Suite 100
Little Rock, AR 72202
(501) 907-2555

Richard N. Kessler, Esq.
**HARRIS KESSLER
& GOLDSTEIN LLC**
640 North LaSalle Street
Chicago, IL 60610
(312) 280-0111

Natalie Finkelman Bennett
Nathan Zipperian
**SHEPHERD, FINKELMAN,
MILLER & SHAH, LLC**
352 E. State Street
Media, PA 19063
Telephone:  (610) 891-9883

Counsel for Plaintiffs

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 16 2005

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE CANON USA INC. DIGIC LITIGATION | ) ) ) | MDL Docket No. _____ |

## SCHEDULE OF ACTIONS INVOLVED

1)      David Hyman, David Nugent, Patrick McQuaid, and James L. Branscum, individually and on behalf of all others similarly situated, v. Canon U.S.A. Incorporated, Case No. 05 cv 7233, United States District Court for the Southern District of New York (Rakoff, J.).

2)      Wing Law, individually and on behalf of all others similarly situated, v. Canon U.S.A., Inc., Case No. CV 05-7959 GAF (RZx), United States District Court for the Central District of California, Western Division (Feess, J.).



RECEIVED
CLERK'S OFFICE
2005 NOV 15 A 10:18
JUDICIAL PANEL ON
MULTIDISTRICT
LITIGATION

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 16 2005

FILED
CLERK'S OFFICE

# BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

|  |  |  |
|---|---|---|
| IN RE CANON USA INC. DIGIC LITIGATION | ) ) ) | MDL Docket No. _____ |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT CANON U.S.A., INC.'S MOTION FOR TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

GREENBERG TRAURIG, LLP

Michael Burrows
David J. Stone
200 Park Avenue
New York, NY 10166
Tel:  (212) 801-9200
Fax:  (212) 801-6400

and

Richard H. Silberberg
Christopher G. Karagheuzoff
Brooke E. Pietrzak
DORSEY & WHITNEY LLP
250 Park Avenue
New York, NY 10177
Tel: (212) 415-9200
Fax: (212) 953-7201

*Attorneys for Defendant
CANON U.S.A., INC.*

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................ ii

INTRODUCTION .......................................................................................................... 1

PROCEDURAL BACKGROUND ....................................................................................... 2

FACTUAL BACKGROUND .............................................................................................. 3

ARGUMENT ................................................................................................................. 5

I.   THE CANON USA DIGIC LITIGATION SHOULD BE  TRANSFERRED and consolidated
     UNDER 28 U.S.C. § 1407 ........................................................................................ 5

     A.   The DIGIC Actions Involve Common Questions of Fact and Law ...................... 5
     B.   Individual Questions of Fact or Law Do Not Preclude Consolidation ................. 7
     C.   Transfer and Consolidation Will Serve the Convenience of the Parties and
          Witnesses ................................................................................................... 8
     D.   Consolidation Will Promote Just and Efficient Conduct of the Cases ................. 9
     E.   Consolidation Will Facilitate Uniform Class Certification ................................. 10

II.  THE CANON USA DIGIC LITIGATION SHOULD BE consolidated in THE SOUTHERN
     DISTRICT OF NEW YORK ...................................................................................... 10

CONCLUSION ............................................................................................................. 11

## TABLE OF AUTHORITIES

Federal Cases

In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prod. Liab. Litig.,
    406 F. Supp. 540 (J.P.M.L. 1975)..................................................................... 11

In re Adelphia Commc'ns Corp. Sec. & Derivative Litig.,
    273 F. Supp. 2d 1353 (J.P.M.L. 2003)............................................................... 11

In re Allstate Ins. Co. Underwriting & Rating Practices Litig.,
    206 F. Supp. 2d 1371 (J.P.M.L. 2002)............................................................... 11

In re America Online, Inc., Version 5.0 Software Litig.,
    2000 U.S. Dist. LEXIS 13262 (J.P.M.L. June 2, 2000)........................................ 11

In re AT&T Corp. Sec. Litig.,
    No. 1399, 2001 U.S. Dist. LEXIS 5233 (J.P.M.L. Apr. 19, 2001)........................ 7, 8

In re Cooper Tire & Rubber Co. Tires Products Liab. Litig.,
    No. 1393, 2001 WL 253115 (J.P.M.L. Feb. 23, 2001)......................................... 9

In re Cuisinart Food Processor Antitrust Litig.,
    506 F. Supp. 651 (J.P.M.L. 1981)..................................................................... 8

In re First Nat'l Bank, Heavener Okla. (First Mortgage Revenue Bonds) Sec. Litig.,
    451 F. Supp. 995 (J.P.M.L. 1978)................................................................... 6, 9

In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.,
    229 F. Supp. 2d 1377 (J.P.M.L. 2002)............................................................... 8

In re Gas Meter Antitrust Litig.,
    464 F. Supp. 391 (J.P.M.L. 1979)..................................................................... 9

In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig.,
    966 F. Supp. 1525 (E.D. Mo. 1997) .................................................................. 5

In re IDT Corp. Calling Card Terms Litig.,
    278 F. Supp. 3d 1381 (J.P.M.L. 2003)............................................................... 5

In re Janus Mut. Funds Inv. Litig.,
    310 F. Supp. 2d 1359 (J.P.M.L. 2004)............................................................... 8

In re Microsoft Corp. Windows Operating Sys. Antitrust Litig.,
    No. 1332, 2000 WL 3448877 (J.P.M.L. Apr. 25, 2000)........................................ 7

In re Nat'l Airlines, Inc. Maternity Leave Practices & Flight Attendant Weight Program Litig.,
    399 F. Supp. 1405 (J.P.M.L. 1975)................................................................... 10

In re St. Jude Medical, Inc., Silzone Heart Valves Products Liab. Litig.,
    No. 1396, 2001 U.S. Dist. LEXIS 5226 (J.P.M.L. Apr. 18, 2001)........................... 11

In re Starlink Corn Prods. Liab. Litig.,
   152 F. Supp. 2d 1378 (J.P.M.L. 2001)........................................................................... 7

In re Sugar Indus. Antitrust Litig.,
   395 F. Supp. 1271 (J.P.M.L. 1975)......................................................................... 6, 10

In re Swine Flu Immunization Products Liab. Litig.,
   446 F. Supp. 244 (J.P.M.L. 1978)............................................................................ 8-9

In re The Progressive Corp. Ins. Underwriting & Rating Practices Litig.,
   259 F. Supp. 2d 1370 (J.P.M.L. 2003)........................................................................ 6

In re Wireless Telephone 911 Calls Litig.,
   259 F. Supp. 2d 1372 (J.M.P.L. 2003)........................................................................ 5

Federal Statutes

28 U.S.C. § 1407.................................................................................................. passim

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## CANON U.S.A., INC.'S MOTION FOR
## TRANSFER AND CONSOLIDATION PURSUANT TO 28 U.S.C. § 1407

Defendant Canon U.S.A., Inc. ("Canon USA") respectfully moves the Judicial Panel on

Multidistrict Litigation (the "MDL Panel") for an order pursuant to 28 U.S.C. § 1407 transferring

Law v. Canon U.S.A., Inc., Case No. CV 05-7959 GAF (RZx), United States District Court for

the Central District of California ("Law"), to the United States District Court for the Southern

District of New York to be consolidated with Hyman, et al., v. Canon U.S.A. Incorporated, Case

No. 05 cv 7233 (JSR), United States District Court for the Southern District of New York

("Hyman," collectively, the "DIGIC Actions") for coordinated pretrial proceedings.

### INTRODUCTION

Hyman and Law are fundamentally identical lawsuits, involving the same factual

allegations and same types of legal theories. Each complaint alleges that almost every one of the

millions of digital cameras marketed and sold by Canon USA since September 2002 – some of

the most popular models of digital camera sold in America – are defective, and that the problem

is caused by a defect in Canon USA's proprietary image processing chip, called the DIGIC. The

DIGIC Actions assert claims only against Canon USA. The alleged class periods in the DIGIC

Actions overlap. The DIGIC Actions are pending in two federal district courts across the

1

country from one another, one in the Central District of California and the other in the Southern District of New York. Plaintiffs purport to represent residents of 50 states and the District of Columbia, who have acquired relevant models of Canon-brand cameras.

Pursuant to 28 U.S.C. § 1407, Canon USA requests that the MDL Panel transfer the <u>Law</u> action to the Southern District of New York to be consolidated with the <u>Hyman</u> action, already pending in that court, for coordinated pre-trial proceedings. Canon USA further requests transfer and consolidation of any related tag-along actions that either have been or will be filed. Given the similarity and complexity of these cases, the Canon USA DIGIC Litigation falls squarely within the statutory requirements of Section 1407. Coordination of pretrial proceedings is necessary for the just and efficient conduct of the litigation.

## PROCEDURAL BACKGROUND

### Plaintiffs Filed Several Actions Accusing
### Canon USA of Manufacturing and Selling a Defective Product

The first relevant action against Canon USA was filed by Plaintiff David Hyman on or about August 15, 2005, in the Southern District of New York. That action was assigned to the Hon. Stephen C. Robinson at the White Plains, New York courthouse and then re-assigned to the Hon. Jed S. Rakoff in Manhattan. Plaintiffs David Nugent and Patrick McQuaid filed a simlar action on or about September 8, 2005, also in the Southern District of New York. That action was assigned to the Hon. Miriam Goldman Cedarbaum in Manhattan. The <u>Hyman</u> action was then transferred to Judge Rakoff and, on or about September 29, 2005, Judge Rakoff ordered that the <u>Hyman</u> and <u>Nugent</u> cases be consolidated before him. The three Plaintiffs filed a Consolidated Amended Class Action Complaint on October 7, 2005, which added a fourth Plaintiff, James L. Branscum. Canon USA has not yet filed a responsive pleading or motion in <u>Hyman</u>, nor has either party produced discovery.

The second action, Law, was filed in the California Superior Court for the County of Los Angeles, on or about October 17, 2005. Canon USA was served with the complaint on October 26, 2005. Canon USA removed the action to federal court on November 8, 2005. No other proceedings have taken place in Law.

On November 4, 2005, Judge Rakoff granted the Hyman Plaintiffs' request to file a second amended complaint. The Hyman Plaintiffs' second amended complaint is due to be filed on or about November 18, 2005.

## FACTUAL BACKGROUND

### The DIGIC Actions Have Nearly Identical Factual Allegations

The DIGIC Actions consist of essentially the same factual allegations, covering essentially the same time period, against the same defendant, and alleging violations of analogous consumer protection statutes and common law theories of liability. Each complaint alleges that:

- Canon USA designs, manufactures, markets and sells digital cameras, including the Canon-brand PowerShot "point-and-shoot" digital cameras.

- Canon USA developed a proprietary image processor, the DIGIC, which was introduced to the market in or around September 2002.

- The DIGIC chip is included in over 50 models of Canon-brand cameras.

- The DIGIC chip is the "brain" of the Canon-brand cameras, controlling "almost every function of the camera."

- Canon USA spent $42 million marketing and advertising DIGIC-containing cameras.

- The DIGIC chip is defective.

- The defective DIGIC chip causes irreparable problems with the cameras' lens barrel extension and retraction, evidenced by an "E18" error message, which renders the cameras inoperable.

- The defective DIGIC chip causes irreparable problems with the cameras' ability to read memory cards, evidenced by a "Memory Card Error!" message, which renders the cameras inoperable.

- Canon USA was aware of the defects in the DIGIC when it sold the cameras, but withheld that information from consumers.

**The DIGIC Actions Share Similar Theories of Liability**

The legal claims of the <u>Hyman</u> and <u>Law</u> Complaints are based on various forms of consumer protection statutes and common law claims. <u>Hyman</u> purports to plead five causes of action, including two for Unjust Enrichment, and one each for Breach of Implied Warranty of Merchantability, Negligent Misrepresentation, and violation of New York's Consumer Protection Act. <u>Law</u> purports to plead five similar causes of action: violation of the California Consumers Legal Remedies Act, violation of the California Unlawful, Unfair and Deceptive Business Practices Act, violation of the federal Magnuson-Moss Warranty Act, violation of the California Song-Beverly Warranty Act and Breach of Express Warranty.

Plaintiffs in the DIGIC Actions purport to represent overlapping classes. The <u>Hyman</u> Plaintiffs purport to represent a nationwide class of consumers who purchased one of the relevant models of Canon-brand digital cameras from August 15, 1999 through August 15, 2005, and assert at least one of their claims (<u>i.e.</u>, for unjust enrichment) on behalf of consumers located in California. The plaintiff in <u>Law</u> purports to represent a class of California consumers who purchased one of the relevant models of Canon-brand digital cameras from October 17, 2001 to the present.

Each of the actions is in its infancy: no answers or pre-answer motions have been filed, no classes have been certified, no discovery responses have been served. In fact, Canon USA is waiting for a second amended complaint to be filed in the <u>Hyman</u> Action. Because of the overwhelming preponderance of factual and legal issues shared by the complaints, coordinating

4

the actions would avoid repetitive review and adjudication, thereby saving substantial time and resources.

The Law action and any other similar actions that may be filed against Canon USA should be transferred to and consolidated in one district.

## ARGUMENT

### I.   THE CANON USA DIGIC LITIGATION SHOULD BE TRANSFERRED AND CONSOLIDATED UNDER 28 U.S.C. § 1407

Transfer and pretrial coordination of two or more civil cases is appropriate upon a finding that (1) the cases "involve[] one or more common questions of fact," (2) the transfers would further "the convenience of the parties and witnesses," and (3) the transfers "will promote the just and efficient conduct of [the] actions." 28 U.S.C. § 1407(a). The DIGIC Actions satisfy these criteria.

#### A.   The DIGIC Actions Involve Common Questions of Fact and Law

The MDL Panel has recognized that overlapping consumer class action lawsuits normally involve the type of common questions that are particularly well-suited for transfer and coordination under 28 U.S.C. § 1407. See, e.g., In re Wireless Telephone 911 Calls Litig., 259 F. Supp. 2d 1372, 1373 (J.M.P.L. 2003) (consolidating ten actions alleging, inter alia, that defendants misrepresented safety features and capabilities of wireless phones); In re IDT Corp. Calling Card Terms Litig., 278 F. Supp. 2d 1381, 1381 (J.P.M.L. 2003) (transfer ordered where "[t]he actions share claims of fraud and negligent misrepresentation based on defendants' alleged failure to adequately disclose rates, fees, and surcharges applied to their telephone cards"); In re Gen. Motors Corp. Anti-Lock Brake Prods. Liab. Litig., 966 F. Supp. 1525, 1529 (E.D. Mo. 1997) (consumer fraud case transferred where plaintiffs alleged that defendants manufactured a dangerously defective brake system and concealed this information from the public).

Common factual questions clearly exist and predominate in the DIGIC Actions.[1]  Among the many common issues alleged in the actions are:  the design, testing and manufacture of the DIGIC; the determination of the scope of the DIGIC's function; the cause of the alleged "E18" error messages; the cause of the alleged "Memory Card Error" messages; the cause of the alleged dim/dark screens; the preponderance of each alleged error message experienced by putative class members; and Canon USA's alleged knowledge of defects in the DIGIC.  Significantly, Canon USA is the only defendant in the actions.  See In re Sugar Indus. Antitrust Litig., 395 F. Supp. 1271, 1273 (J.P.M.L. 1975) (finding that the defendant's presence as a defendant in each relevant case "certainly gives rise to common factual issues").

The MDL Panel has consistently held that transfer under Section 1407 should be granted where, as here, the common questions of fact are complex.  See, e.g., In re First Nat'l Bank, Heavener, Okla. (First Mortgage Revenue Bonds) Sec. Litig., 451 F. Supp. 995, 997 (J.P.M.L. 1978) (transfer under Section 1407 was warranted even though only two actions were involved, where those actions arose from the same factual situation and shared numerous complex questions of fact).  The DIGIC Actions allege issues concerning the design, testing, manufacture and function of a highly complex and proprietary image processing chip.  Each of the actions may require investigation into the functionality of several major components of the cameras.  Each action will also involve examination of the named-Plaintiffs' cameras and cameras owned by other putative class members.

Common questions of fact also exist due to the overlapping and competing claims for class certification.  See In re The Progressive Corp. Ins. Underwriting & Rating Practices Litig., 259 F. Supp. 2d 1370, 1371 (J.P.M.L. 2003) (transfer ordered where plaintiffs sought to represent overlapping classes).  The Law complaint purports to state claims on behalf of all

---

[1]     Although common issues of fact and law predominate between the two Actions, Canon USA does not admit that common issues of fact and law predominate between and among the putative class members.

6

California residents who purchased Canon-brand PowerShot cameras containing a DIGIC. The Hyman complaint purports to state a claim for Unjust Enrichment on behalf of the same putative class of purchasers.

**B.      Individual Questions of Fact or Law Do Not Preclude Consolidation**

The MDL Panel has consistently held that when actions share a common core of factual questions, additional questions of fact unique to individual actions, or different theories of liability and recovery, will not bar transfer and consolidation.  See, e.g., In re Starlink Corn Prods. Liab. Litig., 152 F. Supp. 2d 1378, 1380 (J.P.M.L. 2001) (coordinating cases with different issues allows a single judge to formulate "pretrial proceedings with respect to any non-common issues [and] to proceed concurrently with pretrial proceedings on common issues," among other benefits).

The MDL Panel has also held that different legal theories do not preclude coordination or consolidation:

> Common factual questions arise because all actions concern whether or when AT&T allegedly knew that its results would not match its projections . . . Centralization under Section 1407 is thus necessary in order to eliminate duplicative discovery, prevent inconsistent rulings, and conserve the resources of the parties, their counsel and the judiciary . . . We point out that transfer under Section 1407 does not require a complete identity or even a majority of common factual issues as a prerequisite to transfer.  Nor is the presence of additional or differing legal theories significant when the underlying actions still arise from a common factual core.

In re AT&T Corp. Sec. Litig., No. 1399, 2001 U.S. Dist. LEXIS 5233, *3-4 (J.P.M.L. Apr. 19, 2001); see also In re Microsoft Corp. Windows Operating Sys. Antitrust Litig., No. 1332, 2000 WL 3448877, at *2 (J.P.M.L. Apr. 25, 2000) (same).

Therefore, the fact that these cases are brought under similar, but different, state statutory and common law theories is not sufficient to defeat consolidation.  Indeed, common questions of fact may predominate sufficiently to warrant transfer even when claims are brought under

different legal theories. <u>AT&T</u>, 2001 U.S. Dist. LEXIS 5233, *3-4; <u>see also</u> <u>In re Janus Mut.</u> <u>Funds Inv. Litig.</u>, 310 F. Supp. 2d 1359, 1361 (J.P.M.L. 2004) (Section 1407 consolidation of actions claiming violations of securities laws, "derivative claims, and related claims arising under any other federal and/or state laws").

### C.    <u>Transfer and Consolidation Will Serve the Convenience of the Parties and</u> <u>Witnesses</u>

Transfer and consolidation under Section 1407 will place the Canon USA DIGIC Litigation before a single judge who can formulate a pretrial program that prevents duplication of discovery and conserves the efforts and energies of the parties, witnesses, and the judiciary. <u>See,</u> <u>e.g.</u>, <u>In re Ford Motor Co. Crown Victoria Police Interceptor Prods. Liab. Litig.</u>, 229 F. Supp. 2d 1377, 1378 (J.P.M.L. 2002) ("centralization . . . is thus necessary in order to avoid duplication of discovery, prevent inconsistent or repetitive pretrial rulings (such as those regarding class certification) and conserve the resources of the parties, their counsel, and the judiciary."); <u>In re</u> <u>Cuisinart Food Processor Antitrust Litig.</u>, 506 F. Supp. 651, 655 (J.P.M.L. 1981) (transfer would "effectuate a significant overall savings of cost and a minimum of inconvenience to all concerned with the pretrial activities").

Without consolidation, Canon USA will be subjected to at least two sets of discovery demands and its witnesses will be forced to participate in multiple and redundant depositions. Moreover, a significant number of Canon USA's witnesses are employed at Canon USA's Lake Success, New York headquarters.  Consolidation of the action in the Southern District of New York will serve the convenience of such witnesses.

The MDL Panel has previously relied heavily on the convenience factor, granting transfer where an overall savings of the parties' and witnesses' time and resources would likely be effectuated.  In <u>In re Swine Flu Immunization Products Liab. Litig.</u>, the MDL Panel commented that,

> [T]he judicious use of liaison counsel, lead counsel and steering committees will eliminate the need for most counsel ever to travel to the transferee district . . . [a]nd it is most logical to assume that prudent counsel will combine their forces and apportion the workload in order to streamline the efforts of the parties and witnesses, their counsel and the judiciary, thereby effectuating an overall savings of cost and a minimum of inconvenience to all concerned.

446 F. Supp. 244, 247 (J.P.M.L. 1978).

### D.   Consolidation Will Promote Just and Efficient Conduct of the Cases

In addition to avoiding duplicative and wasteful discovery, consolidation of the DIGIC Actions will also promote the just and efficient resolution of the Parties' disputes by facilitating a faster and more consistent determination of all contested issues.  The Law action was only recently served and removed to federal court.  No proceedings have taken place in that case.  The Hyman case has been pending in federal court since August, but the Hyman Plaintiffs recently announced that they intend to file a second amended complaint.  No discovery has been produced in Hyman, no motions or answer has been filed, and no substantive rulings have been rendered.  Thus, the benefits of coordinated proceedings can be realized from the outset and any later-filed, duplicative actions can be included as tag-along proceedings under the MDL Panel's rules.  See In re Gas Meter Antitrust Litig., 464 F. Supp. 391, 393 (J.P.M.L. 1979) (benefits of transfer and coordination included the "effect of providing a ready forum for the inclusion of any newly filed actions in the centralized pretrial proceedings").

Consolidation will also prevent conflicting pretrial rulings.  See, e.g., In re Cooper Tire & Rubber Co. Tires Products Liab. Litig., No. 1393, 2001 WL 253115, at *1 (J.P.M.L. Feb. 23, 2001) ("Motion practice and relevant discovery will overlap substantially in each action.  Centralization under Section 1407 is thus necessary in order to . . . prevent inconsistent pretrial rulings . . . .");  In re First Nat'l Bank, 451 F. Supp. at 997 (transfer and consolidation of two cases was necessary to "eliminate the possibility of inconsistent pre-trial rulings").  The risk of

9

inconsistent rulings is particularly high in these cases.   Because the allegations in both complaints consist of generalizations made upon information and belief and which are in many respects inaccurate, Canon USA anticipates significant objections to the discovery requests in each action.   If different courts were to determine the discoverability of the same materials in two separate actions, the parties could be faced with results that impose inconsistent or even contradictory obligations on parties and witnesses.

### E.      Consolidation Will Facilitate Uniform Class Certification

The MDL Panel "ha[s] consistently held that transfer of actions under Section 1407 is appropriate, if not necessary, where the possibility of inconsistent class determinations exists." In re Sugar Indus., 395 F. Supp. at 1273, accord In re Nat'l Airlines, Inc. Maternity Leave Practices & Flight Attendant Weight Program Litig., 399 F. Supp. 1405, 1407 (J.P.M.L. 1975) ("the need to eliminate the possibility of overlapping class determinations presents . . . [a] compelling reason" for coordination) (citing cases).

Canon USA will contest any class certification.   The individualized fact issues surrounding each putative class-member's camera, combined with the different legal standards of the various causes of action, virtually require denial of class certification.   However, given the allegations of the complaints, it is clear that arguments for and against class certification will be the same in each action.   Having class certification decided by two courts might lead to inconsistent results, a significant problem with respect to putative classes containing the same individuals.

## II.     THE CANON USA DIGIC LITIGATION SHOULD BE CONSOLIDATED IN THE SOUTHERN DISTRICT OF NEW YORK

Canon USA respectfully submits that this MDL Panel should transfer the Law action to the Southern District of New York for consolidation before Judge Rakoff, who is currently presiding over the Hyman action.   MDL actions are commonly transferred to a forum where one

or more actions are pending.  See In re Adelphia Commc'ns Corp. Sec. & Derivative Litig., 273 F. Supp. 2d 1353, 1355 (J.P.M.L. 2003) (transferring cases to S.D.N.Y. where an SEC civil enforcement proceeding was pending); In re Allstate Ins. Co. Underwriting & Rating Practices Litig., 206 F. Supp. 2d 1371, 1372 (J.P.M.L. 2002); In re A.H. Robins Co., Inc. "Dalkon Shield" IUD Prod. Liab. Litig., 406 F. Supp. 540, 542 (J.P.M.L. 1975).

This result is appropriate for several reasons.  Judge Rakoff has been presiding over the Hyman action and is becoming familiar with the facts and issues in that action.  See In re America Online, Inc., Version 5.0 Software Litig., 2000 U.S. Dist. LEXIS 13262, at *4 (J.P.M.L. June 2, 2000).  Given the range and geographic dispersal of the current related actions, the Southern District of New York also serves as a convenient location for litigation that is already national in scope.  See, e.g., In re St. Jude Medical, Inc., Silzone Heart Valves Products Liab. Litig., No. 1396, 2001 U.S. Dist. LEXIS 5226 at *4-5 (J.P.M.L. Apr. 18, 2001); A.H. Robins Co., 406 F. Supp. at 543.  The Southern District is located near three of the country's busiest airports.  Additionally, Canon USA's and the Hyman Plaintiffs' lead attorneys are located in the Southern District.[2]  Furthermore, the Southern District of New York possesses the resources, expertise, and general caseload conditions that the Canon USA DIGIC Litigation will likely require.

## CONCLUSION

For all the foregoing reasons, Defendant Canon USA respectfully requests that the MDL Panel enter an order transferring the Law Action to the Southern District of New York for consolidation with the Hyman Action for coordinated pretrial proceedings.

Dated: November 14, 2005

---

[2]     Other counsel are in Chicago, San Francisco, New Jersey, Fort Worth, Pennsylvania, and Arkansas.

Respectfully submitted,

GREENBERG TRAURIG, LLP

By: _____
    Michael Burrows
    David J. Stone
    200 Park Avenue
    New York, NY 10166
    Tel:  (212) 801-9200
    Fax:  (212) 801-6400

    and

    Richard H. Silberberg
    Christopher G. Karagheuzoff
    Brooke E. Pietrzak
    DORSEY & WHITNEY LLP
    250 Park Avenue
    New York, NY 10177
    Tel: (212) 415-9200
    Fax: (212) 953-7201

Attorneys for Defendant CANON U.S.A., INC.

JUDICIAL PANEL ON
MULTIDISTRICT LITIGATION

NOV 16 2005

FILED
CLERK'S OFFICE

## BEFORE THE JUDICIAL PANEL ON MULTIDISTRICT LITIGATION

| | | |
|---|---|---|
| IN RE CANON USA INC. DIGIC LITIGATION | ) ) ) | MDL Docket No. |

## PROOF OF SERVICE

I, David Stone, hereby certify that on the 14th day of November, 2005, I caused copies of the following documents to be delivered for filing to the clerk of the United States District Courts for the Southern District of New York and the Central District of California, in which the actions that will be affected by this Motion for Transfer and Consolidation are pending and to be served by mail, as provided in Rules 5 and 6 of the Federal Rules of Civil Procedure, on all parties in all actions involved in the litigation through the attorney for each such party. The attached Party and United States District Court Service Lists contain the names and addresses of all parties caused to be served and all United States District Courts in which copies of the documents were caused to be filed.

**List of Documents**

1) Motion of Defendant Canon U.S.A., Inc. for Transfer and Consolidation Pursuant to 28 U.S.C. § 1407;

2)  Memorandum in Support of Defendant Canon U.S.A., Inc.'s Motion for Transfer and
    Consolidation Pursuant to 28 U.S.C. § 1407;

3)  Schedule of Actions;

4)  this Proof of Service.

David Stone

## PARTY SERVICE LIST

Eric H. Gibbs
Dylan Hughes
GIRARD GIBBS & DE BARTOLOMEO LLP
601 California Street
Suite 1400
San Francisco, CA 94108

*Attorneys for Plaintiff Wing Law*

Richard J. Doherty
James M. Smith
HORWITZ, HORWITZ & ASSOCIATES
25 East Washington Street
Suite 900
Chicago, IL 60602

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

W. Kelly Puls
Brant C. Martin
PULS TAYLOR & WOODSON
2600 Airport Freeway
Fort Worth, TX 76111

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

Richard N. Kessler
HARRIS KESSLER & GOLDSTEIN LLC
640 North LaSalle Street
Chicago, IL 60610

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

Paul O. Pardis
Gina M. Tufaro
ABBEY GARDY, LLP
212 East 39th Street
New York, NY 10016

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

Kevin P. Roddy
Jennifer Sarnelli
WILENTZ GOLDMAN & SPITZER, P.A.
90 Woodbridge Center Drive
Suite 900
Woodbridge, NJ 07095

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

John. G. Emerson
Scott E. Poynter
EMERSON POYNTER LLP
2228 Cottendale Ln.
Suite 100
Little Rock, AR 72202

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

Natalie Finkelman Bennet
Nathan Zipperian
SHEPHERD FINKELMAN MILLER & SHAH, LLC
352 E. State Street
Media, PA 19063

*Attorneys for Plaintiffs David Hyman, David McQuaid, Patrick Nugent and James L. Branscum*

Clerk of the Court
United States District Court
Central District of California
Western Division
312 N. Spring Street
Room G-8
Los Angeles, CA 90012

Clerk of the Court
United States District Court
Southern District of New York
500 Pearl Street
New York, NY 10007